[Crim. No. 43634. Second Dist., Div. Seven. Mar. 8, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
MARCELLUS WARREN, Defendant and Respondent.

**COUNSEL**

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Appellant.

Allan M. Rosenthal, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**MERRICK, J.*—**The People appeal from an order granting defendant's motion to dismiss under Penal Code section 995. The information originally charged the defendant with a violation of Penal Code section 496 (receiving stolen property) and by later amendment, with four prior felony convictions.

*Facts*

At 10:50 p.m. on November 22, 1981, Sergeant Jerome H. Rilling of the Los Angeles Police Department was in uniform, and driving a black-and-white police car, in the vicinity of Fifth and Main Streets in the City of Los Angeles. He observed defendant walking northbound on Main Street carrying six or seven fishing rods and reels and also a brown paper bag.

Sergeant Rilling testified he was a very avid fisherman and owner of a fishing tackle store. He pulled to the curb and spoke to defendant, "How is fishing?" Defendant responded that fishing has been "pretty good." Sergeant Rilling asked, "What type of fishing do you do?" and defendant responded, "Well, mostly fresh water fishing." Sergeant Rilling then asked, "Where do you fish?" and defendant responded, "I fish on lakes around here." And Sergeant Rilling asked, "What kind of fish do you catch?" and defendant responded, "Well, mostly trout and salmon."

At this point, Sergeant Rilling testified he started thinking, "We don't have too many lakes around here, especially any with salmon in them."

---

*Assigned by the Chairperson of the Judicial Council.

While still seated in his police car and talking to defendant standing next to him, he looked at the rods a little closer and noticed the names "Aaron Cohen, J. G. Cohen and Judy Cohen" on the rods. Being a custom rod maker for approximately 12 years, Sergeant Rilling observed that some of the rods were custom-built and others were factory rods—"Saber" rods. From his experience, Sergeant Rilling was aware that most custom-built rods carry the personal name of the owner who purchased the rod, are double-wrapped and usually have more than the minimum of guides than those factory-made.

Calling attention to the "Saber" rod, he asked defendant, "Are they any good?" Defendant responded, "No, they are just cheap old things I bought on sale. I think I paid 25 or $30 for them." Sergeant Rilling was aware that the "Saber" rod is a "very expensive rod." At that time in 1981, it retailed for about $70. He also noticed one of the rods was a heavy-duty rock cod sea water fishing rod and not used on a lake.

Sergeant Rilling testified that he did not say anything or do anything that might indicate to defendant that he was being detained and not free to go. Sergeant Rilling was still sitting in his patrol car.

Defendant pulled out a Chinalla—a MLZ-10, a very good-quality spinning reel. Defendant looked at it and said, "Oh that's a cheapy," and threw it into the bag. He reached in the bag and pulled up another reel, a 10-113-H, also "a very good-quality reel" used for deep sea fishing. Sergeant Rilling asked defendant where he obtained these reels and defendant responded that he purchased them and had the receipts in his hotel room, which he would show to Sergeant Rilling if he would accompany him to the hotel room.

Sergeant Rilling accepted the invitation and along with some backup officers that he called, accompanied defendant to his hotel room. Defendant invited the officers into his hotel room and began looking through drawers for the receipts. After some fruitless searching, defendant responded, " 'Well, I just don't know what happened to them . . . I thought I had some receipts for all this stuff, but I just can't find them.' " At this point defendant was arrested and taken to the police station.

Sergeant Rilling also testified that the defendant did not have any fishing tackle boxes, other fishing tackle or typical fishing paraphernalia.

Sergeant Rilling contacted a Mr. Gerald Cohen the same night by telephone and he verified that his fishing tackle which had been stored in the garage was now missing. At the preliminary hearing he testified that he

went to central police station at 2 a.m. after receiving the telephone call from Sergeant Rilling, and identified as his all of the rods and reels which had been laid out on a table for inspection.

At the conclusion of the preliminary hearing, the magistrate denied defendant's motion to dismiss, found a violation of section 496 of the Penal Code, a felony, had been committed and that there was sufficient cause to believe the defendant, Marcellus Warren, guilty thereof and ordered him held to answer.

The defendant in propria persona, filed a handwritten motion for a hearing under Penal Code section 995. That hearing was held October 1, 1982. The record indicates that the court in making its ruling stated: "After hearing all argument of counsel and having read the transcript of the preliminary hearing of August 11, 1982, I'm going to grant that motion for a 995 . . . Case dismissed." The trial judge gave no specific grounds for his ruling, but based on the arguments from both sides, it would appear the court felt that the defendant had been detained without probable cause.

### Contentions

Appellant contends that the initial stop and conversation was not an investigative stop nor a detention, but merely the commencement of a social conversation between two fishing enthusiasts.

It was only after the ensuing conversation that the cumulative information acquired from defendant and the observations made by Officer Rilling of the fishing rods and reels, that the officer's suspicion was aroused and he deemed a further investigation was warranted, and that subsequent investigation detention was justified. The trial judge erred in granting the 995 motion and dismissing the case.

Respondent argues that defendant was improperly detained; that the stop was an illegal detention for a preliminary investigation based on an officer's "hunch"; that such conduct is illegal under the Fourth Amendment to the United States Constitution; and that the trial judge's ruling was proper, granting the 995 motion and dismissing the case.

### Question

Was the initial stop and conversation an illegal detention?

We think not. "Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of

pleasantries or mutually useful information to hostile confrontations of armed men, involving arrests, or injuries, or loss of life." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 13 [20 L.Ed.2d 889, 901, 88 S.Ct. 1868].) ■ "'There can be no doubt that a police officer in the performance of his duties shares the right of all persons to address another on the public streets, or at least that there is no constitutional proscription of his so doing. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." [Citation.] And so long as his conduct does not constitute a "detention," a police officer may talk to anyone in a public place, "something that any person would lawfully be permitted to do, or try to do." [Citation.] Unless there is some sort of a temporary restraint or holding in custody, there is no detention. [Citations.]'" (*In re Danny E.* (1981) 121 Cal.App.3d 44, 49 [174 Cal.Rptr. 123].)

■ We hold the initial slight intrusion was not a "stop" or "detention," but merely a "contact" between two friendly fishermen. It was 10:50 p.m. in one of the dreariest downtown sections of Los Angeles when Officer Rilling, an avid fisherman and owner of a fishing tackle store, saw another fisherman walking down Main Street clutching a handful of fishing rods. Seeing an opportunity to break the monotony of patrol, he greeted this fisherman with a typical inquiry, "How is fishing?"

At the time of the "contact" Officer Rilling did not suspect the defendant of being involved in some criminal activity and had no intention to detain him. The continuing conversation between Officer Rilling and the defendant was typical banter between two anglers. "Where do you fish?" "What kind of fish do you catch?" It was not until the strange and incredible answers supplied by defendant, evidencing defendant's unfamiliarity with the difference between fresh water rods and sea water fishing rods, and the difference between reels for fresh water and salt water, and defendant's unfamiliarity with the lakes in the area regarding trout and salmon, and the price and quality of the different rods and reels, that Sergeant Rilling became suspicious.

He also had observed while still seated in his patrol car that some of the poles bore the name "Cohen." While defendant in his contentions has not raised the point, we note and confirm, that all of Officer Rilling's observations were made from the driver's seat in the police vehicle, through the open car window, a place where Officer Rilling had a right to be, and did not amount to a search in the constitutional sense. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)

■ "When circumstances demand immediate investigation by the police, the most useful, most available tool for such investigation is general on-the-

scene questioning, designed to bring out the person's explanation or lack of explanation of the circumstances which aroused the suspicion of the police, and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." (*People v. Manis* (1969) 268 Cal.App.2d 653, 665 [74 Cal.Rptr. 423].)

■ The incredible dialog between the late-night fisherman suspect and the uniquely qualified fishing-expert officer, certainly warranted further investigation. Officer Rilling had reasonable cause to detain the defendant in the justifiable belief he was engaged in some criminal activity that brought these rods and reels into his possession. Sergeant Rilling exited the police vehicle to talk further with the defendant. He asked defendant his name and the defendant responded, "James Ramey" (not the defendant's true name).

In response to the officer's query as to where defendant had obtained the reels, defendant stated he purchased them and had receipts in his hotel room. This conflicted with what was apparent, the custom rods and reels with the name "Cohen." Production of the receipts could resolve the ambiguity. Defendant invited the officer to accompany him to his hotel room and he would show him the receipts.

Was it reasonable for Officer Rilling to continue to detain the defendant in order to clear the ambiguity? We hold it was. As the Supreme Court explained in *People v. Leyba* (1981) 29 Cal.3d 591, 599 [174 Cal.Rptr. 867, 629 P.2d 961]: "The very notion that an ambiguity exists and requires resolution implies that an officer will not on each occasion view and be able to state exactly what is occurring. Moreover, '[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. [Citation.]"' (*In re Tony C., [supra]*, 21 Cal.3d at p. 894 [148 Cal.Rptr. 366, 582 P.2d 957]; see e.g., *People v. McNeal* (1979) 90 Cal.App.3d 830 [153 Cal.Rptr. 706]; *People v. Remiro* (1979) 89 Cal.App.3d 809 [153 Cal.Rptr. 89]; *People v. Cowman* (1963) 223 Cal.App.2d 109 [35 Cal.Rptr. 528]; *People v. Jones, supra,* 103 Cal.App.3d 885 [163 Cal.Rptr. 251].)"

As recited under the facts of this case above, the defendant was unable to find any receipts in his hotel room, and at that point he was arrested and taken to the police station.

■ On the face of the record before us, we find that there was sufficient admissible evidence for the committing magistrate to find a violation of

section 496 of the Penal Code (receiving stolen property) and sufficient cause to believe the defendant guilty thereof.

We find that the order of the trial judge granting defendant's motion pursuant to Penal Code section 995 and dismissing the information to be in error. The order appealed from is reversed.

Johnson, Acting P. J., and Thompson, J., concurred.