[Crim. No. 45072. Second Dist., Div. Seven. June 15, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
SHIRLEY ANN SPICER, Defendant and Respondent.

214

**COUNSEL**

Ira Reiner, City Attorney, and Jack L. Brown, Deputy City Attorney, for Plaintiff and Appellant.

Wayne Willford for Defendant and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant Shirley Ann Spicer is charged with wilfully and unlawfully carrying a concealed weapon and with wilfully and unlawfully

carrying a loaded firearm in a public place. Defendant pled not guilty and moved to suppress evidence under Penal Code section 1538.5 contending the discovery of the firearm resulted from an unlawful search and seizure.

The motion to suppress was granted. That ruling was reversed by the appellate department of the superior court in an opinion certified for pub-lication. We ordered the case transferred to this court to settle an important question of law: whether a police officer's request that an automobile pas-senger not suspected of any crime produce her driver's license, which led directly to the discovery of the weapon, constituted an unlawful seizure. Under the circumstances of this case we find it does and accordingly affirm the trial court.

### FACTS

At approximately 1:30 a.m., Police Officers Meck and Webster were on routine patrol when they observed an automobile driven by Thomas Brotwell. The car weaved back and forth between the number two and three lanes approximately four times. The officers also noticed the rear license plate was obstructed and that the license plate light was out, both violations of the Vehicle Code.

The officers pulled the car over and Mr. Brotwell exited the vehicle and began walking toward the officers. Both officers motioned him over to the sidewalk. Mr. Brotwell walked unsteadily. He swayed and staggered and, as he passed, Officer Meck noticed a strong odor of alcohol about his per-son.

Officer Webster then administered a field sobriety test to Brotwell. Mean-time Officer Meck walked over to the passenger side of the car. He asked the defendant, Ms. Spicer, to produce a driver's license. Ms. Spicer began looking in her purse for her license. Officer Meck stood on the sidewalk outside of the vehicle and illuminated Ms. Spicer's purse with his flash-light.[1] While Ms. Spicer was searching in her purse Officer Meck saw what appeared to be the butt of a handgun. At that point, he told Ms. Spicer to stay out of the purse and to exit the vehicle. He then recovered a .38 caliber revolver which was fully loaded.

It is stipulated the officers had probable cause to stop the car. It is further agreed that at the time he approached Ms. Spicer, Officer Meck had no reasonable basis for suspecting her of any crime. Officer Meck testified his

---

[1]Officer Meck testified that, for safety reasons, he always watched when someone reached into a bag.

reason for asking Ms. Spicer for identification was, "In the event that we released the vehicle to her, I wanted to make sure she had a valid California driver's license. I also wanted to see if she had been drinking . . . ." At no time did Officer Meck inform Ms. Spicer of the reasons behind his request for her identification.

### DECISION

*1. Approaching Defendant as She Sat in the Passenger Seat of the Automobile and Requesting Her to Produce Her Driver's License Constituted a Detention of the Defendant.*

In *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325], our Supreme Court observed that, "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' . . . with individuals, ranging from the least to the most intrusive." These categories are the "consensual encounter" which results in no restraint of an individual's liberty, the "detention" which is a limited investigatory seizure based upon reasonable suspicion the individual is involved in criminal conduct and, finally, formal arrest or comparable restraint permissible only upon probable cause to believe the individual has committed a crime. (*Ibid.*)

Finding the line between these three broad categories has proved to be a difficult task and it is not unusual to find different courts reaching conflicting decisions on the same set of facts.[2]

In the case at bar, both the trial court and the appellate department of the superior court found that the acts of Officer Meck constituted a detention. We concur.

The proper resolution of this case turns on a realistic assessment of the contact between the police and Ms. Spicer. We need not decide in this case whether the officers' legitimate act of stopping the car in which she was a passenger constituted a consensual encounter or detention with respect to Ms. Spicer. (But see *Delaware* v. *Prouse* (1979) 440 U.S. 648, 653 [59

---

[2](See, e.g., *United States* v. *Mendenhall* (1980) 446 U.S. 544 [64 L.Ed.2d 497, 100 S.Ct. 1870] reversing the Sixth Circuit Court of Appeals (1979) 596 F.2d 706 which, in turn, reversed the district court; *Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319] affirming an en banc decision of the Florida Court of Appeal, 389 So.2d 1007, 1015 which vacated a contrary opinion by a panel of that court; *Immigration and Naturalization Service* v. *Delgado* (1984) 466 U.S. 210 [80 L.Ed.2d 247, 104 S.Ct. 1758] reversing the Ninth Circuit Court of Appeals, *Intern. Ladies' Garment Workers' etc.* v. *Sureck* (9th Cir. 1982) 681 F.2d 624, which, in turn, had reversed the district court.)

L.Ed.2d 660, 667, 99 S.Ct. 1391]; *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 879-880 [45 L.Ed.2d 607, 615, 95 S.Ct. 2574].) It may, indeed, constitute a "close encounter of the third kind." Be that as it may, we hold that when Officer Meck stood at the passenger door and asked to see Ms. Spicer's driver's license the "close encounter" became a detention because the circumstances of the encounter were sufficiently intimidating as to demonstrate that a reasonable person would have believed she was not free to leave if she had not responded. (*Delgado, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 255].)

▮ The fact the restraint on Ms. Spicer's liberty was minimal does not make the restraint a reasonable one. The Fourth Amendment applies to all seizures of the person including those consuming no more than a minute. (*United States* v. *Brignoni-Ponce, supra,* 422 U.S. at pp. 879-880 [45 L.Ed.2d at pp. 615-616].)

▮ In *Wilson,* the court found the distinguishing feature between a consensual encounter and a detention is whether " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave.' " (34 Cal.3d. at p. 790, quoting *United States* v. *Mendenhall, supra,* 446 U.S. at p. 554 [64 L.Ed.2d at p. 509].)

The location where the contact takes place is an important factor in determining if a "seizure" has occurred. It has been noted, for example, that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . ." (*Florida* v. *Royer, supra,* 460 U.S. at p. 497 [75 L.Ed.2d at p. 236, 103 S.Ct. at p. 1324].) In *Wilson* the court found merely approaching the defendant in the airport loading zone did not constitute a detention. (34 Cal.3d at p. 790.) The rationale for not treating such encounters as seizures is that the individual is free to disregard the officer's questions and walk away. (*Mendenhall, supra,* 446 U.S. at p. 554; *Royer, supra,* 103 S.Ct. at p. 1324; *Wilson, supra,* 34 Cal.3d at p. 789; *People* v. *Warren* (1984) 152 Cal.App.3d 991, 996 [199 Cal.Rptr. 864].) While this may be the greatest legal fiction of the late 20th century (*State* v. *Shy* (La. 1979) 373 So.2d 145, 149 (dis. opn. of Dennis, J.), we are bound to give it due regard.

In the case at bench, Ms. Spicer was contacted as she sat in the passenger seat of an automobile in a residential neighborhood at 1:30 in the morning. Her freedom of movement was practically nil. (Cf. *Immigration and Naturalization Service* v. *Delgado, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 256] [no detention because workers were free to move about the work place].) To say under these circumstances Ms. Spicer "remain[ed] free to

disregard the [officer's] questions and walk away" (*Mendenhall, supra,* 446 U.S. at p. 554) would be to defy what common sense tells us.

The evidence also supports the conclusion Ms. Spicer's freedom of movement was restrained by a show of authority. (*Mendenhall, supra,* 446 U.S. at p. 553 [64 L.Ed.2d at p. 508]; *Royer, supra,* 460 U.S. at p. 501 [75 L.Ed.2d at p. 239, 103 S.Ct. at p. 1326]; *In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957].) She was confronted by a uniformed officer almost immediately after the car in which she was riding was stopped. Without any explanation or prefatory remarks, the officer requested her driver's license.

The nature of the questions asked by the officer during a contact are also relevant to the seizure issue. (See *Wilson, supra,* 34 Cal.3d at pp. 790-791; *Mendenhall, supra,* 446 U.S. at p. 554.) An unequivocal verbal command is far more likely to produce the perception of restricted liberty than a mere approach (*People* v. *Jones* (1979) 96 Cal.App.3d 820, 825-826 [158 Cal.Rptr. 415]), casual banter (*People* v. *Warren, supra,* 152 Cal.App.3d at p. 996), or an ambiguous statement which could be either a command or a request. (*People* v. *King* (1977) 72 Cal.App.3d 346, 349-350 [139 Cal.Rptr. 926].) Furthermore, " 'a reasonable person might read an officer's "May I" as the courteous expression of a demand backed by force of law.' " (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 289 [36 L.Ed.2d 854, 898, 93 S.Ct. 2041], Marshall, J., dis.) The attitude expressed by Ms. Spicer toward the police is credible and almost certainly typical. She testified, "I just felt like if a policeman should ever stop me if he wants my purse he will ask me. If he asks me to get out of car I am coming out with [my] hands free. I have read too many people getting shot these days by policemen who thought . . . ."[3]

It is especially pertinent to this case that the officer did not explain to Ms. Spicer his reason for requesting her driver's license. In *People* v. *James* (1977) 19 Cal.3d 99, 118 [137 Cal.Rptr. 447, 561 P.2d 1135], our Supreme Court stated, "While we reject an absolute requirement of a warning of the right to refuse permission as a precondition to a consent search, we do not intend to discourage the giving of such advice in appropriate cases. In view of the settled rule that the lack of such a warning is a factor to be taken into account in applying the totality of the circumstances test [citations omitted], the police would be well advised in close cases to 'make a record' by expressly giving the admonition . . . ." In *Mendenhall* the majority found that knowledge of the right to refuse a search request was "highly relevant" to the determination that there had been consent. (446 U.S. at pp. 558-559 [64

---

[3]The prosecutor did not allow Ms. Spicer to complete this sentence.

L.Ed.2d at pp. 512-513].) Where, as here, the circumstances are pregnant with coercion, an admonition along the lines mentioned in *James* was called for.

Implicit in the notion of a consensual encounter is a choice on the part of the citizen not to consent but to "decline to listen to the questions at all and . . . go on his way." (*Royer, supra,* 460 U.S. at p. — [75 L.Ed.2d at p. 236, 103 S.Ct. at p. 1324].) Mr. Justice Stewart once commented, "The Constitution guarantees . . . a society of free choice. Such a society presupposes the capacity of its members to choose." (*Ginsberg* v. *New York* (1968) 390 U.S. 629, 649 [20 L.Ed.2d 195, 209, 88 S.Ct. 1274], (concurring in the result).) ▮ In the case at bench, Ms. Spicer was not given the opportunity to make a choice. Had Officer Meck informed Ms. Spicer he wanted to see her driver's license because Mr. Brotwell might be arrested and the car turned over to her, Ms. Spicer would have understood she had a choice. She could produce the license or not depending on whether she desired to take charge of the automobile. Had the officer made his purpose known to Ms. Spicer, it would have substantially lessened the probability his conduct could reasonably have appeared to her to be coercive. (*Mendenhall, supra,* 446 U.S. at p. 559 [64 L.Ed.2d at p. 512].)

What we have said here should not be construed as a holding to the effect every encounter between the police and a citizen must be prefaced by a "*Spicer* warning" that the citizen is free to ignore the officer and walk away. Indeed this court recently upheld admission of evidence derived through an encounter where the police gave no warning whatsoever. (*People* v. *Warren, supra,* 152 Cal.App.3d 991.) We hold only that under the totality of the circumstances of the present case the failure to offer Ms. Spicer a choice whether or not to produce her driver's license, together with the other factors discussed above, resulted in a seizure for Fourth Amendment purposes.[4] Nor are we holding that every time a police officer converses with an automobile passenger in a situation like this it inevitably constitutes a detention. What was involved here was not casual banter but a direct request the defendant search for and produce a document. In circumstances pregnant with coercion that amounts to an unlawful seizure.

*2. The Detention of Ms. Spicer Was Not Justified by Legitimate Requirements of Law Enforcement.*

▮ The People argue that even if the contact with Ms. Spicer is held to be a seizure it was a reasonable seizure. It is urged that the police were

---

[4]Had Officer Mack *first* established Mr. Brotwell desired the car to be turned over to Ms. Spicer and Ms. Spicer was willing to take that responsibility and *then* requested Ms. Spicer's driver's license, we would have no difficulty in finding a consensual encounter. Far from imposing an unreasonable burden on the officer, taking the steps in the order we have described appears to be the logical way of proceeding in this situation.

faced with a dilemma. Pursuant to Vehicle Code section 22651, subdivision (h), an officer may impound a vehicle to remove it from the highway when its driver is arrested. However, before impounding it the police are required to ascertain the driver's wishes and the passenger's willingness to drive the car. (*Virgil* v. *Superior Court* (1968) 268 Cal.App.2d 127, 132 [73 Cal.Rptr. 793].)

More recently, in *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461], police officers were held liable for the death and serious injuries of the occupants of a car struck by a vehicle driven by an intoxicated motorist after the car's previous driver had been arrested for drunk driving by the officers. There, the court held the officers had no mandatory duty to impound the vehicle or to arrest the passengers along with the previous driver. Nonetheless, it found they were negligent in failing to disable the vehicle after they had an opportunity to observe the passengers were also intoxicated and had ascertained one of the passengers did not have a valid driver's license. This holding implicitly imposes an obligation on the police once they have arrested an automobile driver for driving under the influence. That obligation is to investigate the physical condition and driver's license status of the passenger to whom the car is being released.

Furthermore, in *Martinez* v. *Superior Court* (1970) 7 Cal.App.3d 569, 576 [87 Cal.Rptr. 6], the court held police officers were not required to release the vehicle of a driver arrested for drunk driving to an individual claiming to be related to the driver, where the officers were unable to satisfactorily establish that person's identity.

Thus we recognize the police had a legitimate interest in the disposition of Mr. Brotwell's car in the likely event he was arrested for drunk driving. But events had not ripened to this stage when Officer Meck approached Ms. Spicer. More important, Officer Meck had not established Brotwell wanted Ms. Spicer to drive his car or that Ms. Spicer had any interest in doing so. Thus the premise of the People's case fails. Absent any indication Ms. Spicer would be given custody of the car, there was no legitimate reason to request her driver's license. Of course, even if the premise were established, it would not justify a *detention* of the passenger in order to determine whether the passenger possessed a valid driver's license. Only a reasonable suspicion of criminal misconduct justifies a detention. (*Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2637]; *In re Tony C.*, *supra*, 21 Cal.3d at p. 893.)

## Disposition

The order granting defendant's motion to suppress is affirmed.

Thompson, Acting P. J., and Lew, J.,* concurred.

A petition for a rehearing was denied July 16, 1984.

*Assigned by the Chairperson of the Judicial Council.