[No. F011666. Fifth Dist. Feb. 15, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLAND JAMES GRANT, Defendant and Appellant.

## COUNSEL

Jeanne Keevan-Lynch, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, Acting P. J.—**

### STATEMENT OF THE CASE

Pursuant to a plea bargain which included a 10-year lid on the trial court's sentencing power, defendant entered a nolo contendere plea to transportation of cocaine (Health & Saf. Code, § 11352) and possession of cocaine for sale (Health & Saf. Code, § 11351) and admitted attendant enhancement allegations that the quantity of cocaine exceeded 10 pounds within the meaning of Health and Safety Code section 11370.4, subdivision (a)(2), and that the cocaine in defendant's possession exceeded 57 grams within the meaning of Penal Code section 1203.073, subdivision (b)(1).

Defendant was sentenced to state prison for four years for transportation of cocaine plus five years, consecutive, for the special allegation for a total term of nine years. He was sentenced to state prison for three years on the possession charge plus five years for the special allegation, execution of sentence stayed pursuant to Penal Code section 654.

On appeal, defendant challenges the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5, contending the discovery of the cocaine resulted from an unlawful detention. We affirm.

## STATEMENT OF FACTS

The operative facts, taken from the transcript of the de novo hearing on the motion to suppress, are generally without dispute. Defendant did not testify at the hearing.

On June 21, 1988, California Highway Patrol Officer Rubin Soliz was patrolling Interstate 5 in Kern County. At approximately 10 p.m., Officer Soliz observed a white Ford Taurus and a brown Ford pickup traveling in excess of the speed limit. Soliz advised the driver of the Taurus, through a loudspeaker, to pull in behind while he stopped the pickup. He then pulled behind the pickup and activated the red light. The pickup pulled over, but the Taurus drove past the officer. Soliz then advised the pickup to pull in behind, and activated his red light to stop the Taurus. He suspected the Taurus was trying to evade him, but succeeded in stopping the vehicle on the shoulder of the roadway.

Officer Soliz explained the reason for the stop to the driver of the Taurus, then requested his driver's license, vehicle registration and proof of insurance. The driver said that he had lost his license and had no other identification. The driver was asked to get out of the car so that he could identify himself outside the hearing range of defendant, who was a passenger in the vehicle. The driver said his name was Edward Shawn Henderson. Officer Soliz then asked defendant to identify the driver. He gave the name "Henderson."

Officer Soliz then left for the purpose of issuing a citation to the driver of the pickup. Defendant remained in the Taurus while the driver stood near the patrol car. Soliz did not tell defendant to wait while he wrote up the violation on the pickup.

After 10 to 15 minutes, Soliz returned to the Taurus. He asked defendant his name, and then asked if he had any identification. Defendant identified himself as Roland Green and said he did not have a driver's license. Defendant was not suspected of any criminal activity at that time. Officer Soliz testified that he questioned defendant to find out if he was licensed so the car could be released to him after the driver was cited. Consistent with California Highway Patrol policy, Soliz did not want to arrest the driver for operating the vehicle without a license. Soliz also needed to identify defendant as a possible witness in any court proceeding.

After defendant stated he had no identification, Officer Soliz asked him to get out of the car and join the driver near the patrol car. Officer Soliz testified that being alone, in a rural area, for personal safety he wanted to

keep the driver and passenger together. As defendant got out of the vehicle, Soliz asked who owned the Taurus. He wondered whether the vehicle was stolen. Defendant told him it was owned by his aunt.

Officer Soliz returned to his patrol vehicle and ran the name and date of birth of the driver through communications. He was advised there was no driver's license issued under the name Edward Shawn Henderson. At this point, the officer began to suspect that the two had lied about the driver's identity.

In Officer Soliz's experience, many people hide their identification and give a false name when pulled over for a traffic violation. Soliz, still the only officer present, explained this to defendant, asking in a calm voice if he could search the automobile for some type of identification. Defendant said, "Yeah. Sure."

In searching the vehicle, Soliz found several pagers, a mobile telephone, and a rental agreement for the Taurus which was not in the name of Henderson or Green. Soliz believed these articles to be consistent with drug trafficking. He then asked if he could search the trunk to look for identification. Defendant said he did not have a key for the trunk. Soliz asked if it was all right to look in the trunk if he could find a way to get inside and defendant again said, "Yeah, sure." Around this time two other officers arrived. The backseat of the Taurus was removed to reveal five packages believed to contain drugs bundled for transportation. One of the packages was opened to reveal a white powder. The packages were seized, and defendant and the driver were arrested.

## DISCUSSION

### *Was Defendant Unlawfully Detained at the Time He Consented to a Search of the Vehicle?*

 Specifically not contesting the vehicle stop and, if the consent to search was valid, the subsequent search of the vehicle, defendant's sole contention on appeal is that consent to search the vehicle was the product of an unlawful seizure of his person. Because the searching officer had already acted illegally, he argues, the consent was invalid. Defendant draws a narrow bead on the issue: "The essential question is whether the consent to search that enabled the development of the probable cause was obtained during an illegal seizure of appellant's person. . . . Specifically, the seizure became unreasonable to appellant when Officer Soliz asked appellant to produce identification."

■ An appellate court's review of a trial court's ruling on a motion to suppress pursuant to Penal Code section 1538.5 is governed by well-settled principles.

"In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. . . .

"The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review. [Citations.] The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness."' (*People* v. *Loewen, supra*, [(1983) 35 Cal.3d 117] at p. 123 [196 Cal.Rptr. 846, 672 P.2d 436].)" (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].) Here, inasmuch as the evidence relating to the search and seizure is essentially undisputed, our task is limited to an independent review of the second and third steps.

■ Reviewing the court's denial of the motion to suppress under the foregoing principles, we find it was reasonable to request identification from a passenger in connection with a lawful traffic stop under the circumstances. Accordingly, the ruling must be upheld.

Defendant challenged the search of the car trunk on various grounds at the trial level. The court issued a written ruling which provides in part as follows: "The motion to suppress is denied. Defendant concedes there was probable cause to stop the car and detain or even arrest the driver. It was not unreasonable for defendant to be asked for identification, and when no driver's licenses or vehicle registration was forthcoming from either occupant to request permission to search the vehicle for evidence of licensing or registration. The defendant had a simple remedy: he could have refused permission. Certainly there was no probable cause to search the car before the consent. The defendant was certainly detained in the sense that he was asked to exit the vehicle, but a brief removal of defendant for officer safety is not unconstitutional. Thereafter, he could leave, but would have been unable to leave with the auto, absent proof of licensing."

■ The Fourth and Fourteenth Amendments of the United States Constitution forbid unreasonable searches and seizures. Stopping a vehicle and

detaining its occupants constitutes a "seizure" within the meaning of these amendments. (*Delaware* v. *Prouse* (1979) 440 U.S. 648, 653 [59 L.Ed.2d 660, 667, 99 S.Ct. 1391].) A passenger may challenge an unlawful stop because personal liberty and freedom of travel are intruded upon by such an act. (*People* v. *Lionberger* (1986) 185 Cal.App.3d Supp.1, 4-5 [230 Cal.Rptr. 358].)

If we understand defendant's position, he claims the request for identification was in excess of reasonable law enforcement practices connected with the traffic stop, and therefore illegal. He further suggests that the contact between himself and Officer Soliz was a separate detention, beyond that inherent in the vehicle stop, requiring individualized suspicion of criminal activity to justify the intrusion. To the extent these claims can be addressed separately, we will do so below.

Although each case must be decided on its specific facts, the " 'reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security' " is the guiding principle. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 19 [20 L.Ed.2d 889, 904, 88 S.Ct. 1868], quoted with approval in *In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957].) The permissibility of a particular law enforcement practice is judged "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (*Delaware* v. *Prouse, supra*, 440 U.S. 648, 654 [59 L.Ed.2d 660, 667-668].)

A police officer may legally stop a motorist he suspects of violating the Vehicle Code for the purpose of issuing a citation. (See *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205].) A violator is viewed as being detained against his will by the police officer. He is not to depart until he has satisfactorily identified himself and has signed a written promise to appear. (*Ibid.*) The law contemplates that an officer may temporarily detain the offender at the scene for the period of time necessary to discharge the duties related to the traffic stop.

"That period, although brief, is not insignificant. To begin with, it must necessarily include the time required by the officer to write out the citation and obtain the offender's promise to appear . . . . Other code provisions imply that it will include more. Thus upon demand of a police officer every motorist must present for 'examination' both his driver's license (Veh. Code, § 12951, subd. (b)) and the registration card of the vehicle (*id.*, § 4462, subd. (a))." (*People* v. *McGaughran* (1979) 25 Cal.3d 577, 584 [159 Cal.Rptr. 191, 601 P.2d 207], fn. omitted.)

Defendant claims the scenario here went "beyond the scope of the usual remedies for a traffic infraction." We disagree. If nothing had

developed beyond the routine traffic stop, defendant might have cause to attack the detention. This was not a "routine" stop, however. Officer Soliz could lawfully do more than write out a citation and send Anderson and defendant on their way.

The Taurus did not initially pull over when ordered to do so by Officer Soliz, and he reasonably wondered if occupants of the vehicle were trying to evade him. The driver of the Taurus could not "satisfactorily" identify himself or produce the vehicle registration. Officer Soliz thereafter sought identification from defendant: (1) to have a witness to corroborate who was driving the car in any later prosecution; (2) to determine whether the vehicle could be lawfully turned over to the passenger. In turning his attention to the passenger, Officer Soliz was not investigating matters unrelated to the reason for the traffic stop, as defendant asserts. ▪ The citation procedure is essentially an honor system, requiring the good faith and cooperation of the person cited. "At the very least, he must be able to convince the officer—either by exhibiting his driver's license or by 'other satisfactory evidence'—that the name he is signing on the written promise to appear corresponds to his true identity [citation]." (*People* v. *Superior Court* (*Simon*), *supra*, 7 Cal.3d 186, 201.) ▪ Officer Soliz was justified in attempting to secure proof of the driver's identity by questioning defendant.

Defendant cites *People* v. *Spicer* (1984) 157 Cal.App.3d 213 [203 Cal.Rptr. 599] for the proposition that the "seizure" was unreasonable. Ms. Spicer was a passenger in a car which police officers observed weaving in traffic. After administering a field sobriety test to the driver of the stopped car, the officer asked Spicer to produce a driver's license. As Spicer searched in her purse, the officer, using a flashlight, was able to see a revolver in her bag. He seized the weapon. It was stipulated that the officer had probable cause to stop the car and that Spicer, the passenger, was not suspected of any crime at the time she was approached. The reason the officer gave for requesting the license was to verify whether the vehicle could be released to the passenger. On an appeal by the People the appellate court affirmed the granting of Spicer's motion to suppress, finding that although the police had a legitimate interest in disposition of the car, there was no valid reason to request her driver's license "[a]bsent any indication Ms. Spicer would be given custody of the car . . . ." (*Id.* at p. 221.)

In *Spicer,* the driver's identity was not in issue. Here, the officer needed to exhaust all avenues to reliably identify the driver before deciding how to handle the violation.

In *People* v. *Maxwell* (1988) 206 Cal.App.3d 1004 [254 Cal.Rptr. 124], the court found the officer's conduct in ordering the passenger out of a car

without license plates reasonable where the driver had no identification or vehicle registration and the officer wanted to see if the passenger could aid in accurately identifying the driver.

The "seizure" of the occupants of the vehicle was a reasonable one. Defendant was detained only for the period necessary to perform the functions arising from the violation. The limited scope and duration of the stop satisfy the conditions of an investigative seizure.

Relying primarily on *People* v. *Spicer, supra*, 157 Cal.App.3d 213, defendant argues that the passenger/officer contact which took place had to be justified by specific and articulable facts of *defendant's* involvement in some criminal activity. Put simply, the question defendant poses is whether law enforcement contact with a passenger is a separate detention requiring justification beyond that warranting the traffic stop. We think not, at least under the circumstances presented here.

The *Spicer* analysis commences with the statement, "The proper resolution of this case turns on a realistic assessment of the contact between the police and Ms. Spicer." (*People* v. *Spicer, supra*, 157 Cal.App.3d at p. 217.) The "realistic assessment" was that "when Officer Meck stood at the passenger door and asked to see Ms. Spicer's driver's license the 'close encounter' became a detention because the circumstances of the encounter were sufficiently intimidating as to demonstrate that a reasonable person would have believed she was not free to leave if she had not responded." (*Id.* at p. 218.) The court expressly avoided deciding "whether the officers' legitimate act of stopping the car in which she was a passenger constituted a consensual encounter or detention with respect to Ms. Spicer." (*Id.* at p. 217.)

We believe the United States Supreme Court answered this question in *Prouse* by characterizing a traffic stop as a "seizure" of the automobile's "occupants." (*Delaware* v. *Prouse, supra*, 440 U.S. at p. 653 [59 L.Ed.2d at p. 667].) Defendant on the one hand characterizes the contact as a "seizure" of his "person" as an occupant of a lawfully stopped vehicle under *Delaware* v. *Prouse,* and at the same time argues that justification independent of the traffic stop is required to detain him. He cannot have it both ways. We find, after a realistic assessment of the facts, that the stop and detention of defendant was merely incident to his being a passenger in a lawfully stopped vehicle. (See *State* v. *Zimmerlee* (1980) 45 Ore. 107 [607 P.2d 782, 784].) Therefore, if the stop of the vehicle and its operator was lawful, which we think it was, there was a lawful basis to stop and detain defendant. Other than to distinguish *People* v. *Spicer,* we see no need to characterize the nature of the officer/passenger contact where it does not go beyond the legitimate law enforcement practices incidental to the traffic stop. If we

assess the nature of defendant's encounter with Officer Soliz, independent of the stop, as *Spicer* seems to do, we conclude that no separate "detention" of defendant occurred. At most, we find the encounter a consensual one.

█ "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) A " 'consensual encounter' " results in no restraint of an individual's liberty and may properly be initiated by police officers without " 'objective justification.' " (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].) "[I]t is quite clear police do not need to have a reasonable suspicion in order to ask questions or request identification: . . ." (*People* v. *Lopez* (1989) 212 Cal.App.3d 289, 291 [260 Cal.Rptr. 641], quoting *INS* v. *Delgado* (1984) 466 U.S. 210, 216 [80 L.Ed.2d 247, 255, 104 S.Ct. 1758]: " '[O]ur recent decision in [*Florida* v. *Royer* (1983) 460 U.S. 491 (74 L.Ed.2d 229, 103 S.Ct. 1319)] plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.' ")

█ We do not read *Spicer* to require a showing of reasonable suspicion focusing on the *passenger* to justify a request for identification in connection with a valid traffic stop. (*People* v. *Spicer, supra,* 157 Cal.App.3d at p. 220.) In *Spicer,* the court found the totality of circumstances "pregnant with coercion that amounts to an unlawful seizure." (*Ibid.*) We do not find such an element of coercion here. Further, the intrusion occasioned by demanding "the defendant search for and produce a document" in *Spicer* (*ibid.*) was much greater than a mere request for a driver's license. While the defendant searched for the document, the officer looked into her purse with the aid of a flashlight. We would characterize this contact as a "search," an intrusion unnecessary to effectuate the purpose of the stop. In *People* v. *Maxwell, supra,* 206 Cal.App.3d 1004, 1010, footnote 3, *Spicer* was distinguished on its facts. A request by police that a passenger alight from a lawfully stopped vehicle in *Maxwell* did not amount to a detention within the meaning of the Fourth Amendment.

Law enforcement officers do not violate the Fourth Amendment in approaching an individual on the street or in another public place and asking if he is willing to identify himself. (*Florida* v. *Royer,* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 103 S.Ct. 1319].) Once the privacy of a car has been intruded upon by a lawful traffic stop, we find no reason to expand the rights of passengers in vehicles beyond those afforded travelers in airports (*Wilson* v. *Superior Court, supra,* 34 Cal.3d 777, 790 [approaching defendant in the airport loading zone did not constitute a detention]; *Flori-*

*da* v. *Royer, supra,* 460 U.S. 491, 501 [75 L.Ed.2d 229, 238-239] [asking for and examining defendant's ticket and driver's license in airport, without more, would not have been a seizure for Fourth Amendment purposes]); employees in garment factories (*INS* v. *Delgado, supra,* 466 U.S. 210 [no detention where employees questioned during business hours with INS agents stationed at exits]); or fishermen on public streets (*People* v. *Warren* (1984) 152 Cal.App.3d 991, 996 [199 Cal.Rptr. 864] [contact initiated by police officer/fishing enthusiast with man carrying stolen fishing equipment not a detention]).

We find, as a matter of law, that the questioning of defendant was not unreasonable under the circumstances and did not amount to a separate "detention" requiring separate justification. Defendant's consent to search was not rendered invalid or involuntary by Officer Soliz's prior request for identification. Defendant's motion to suppress was properly denied.

### DISPOSITION

The judgment is affirmed.

Dibiaso, J., and Vartabedian, J., concurred.

A petition for a rehearing was denied March 13, 1990, and appellant's petition for review by the Supreme Court was denied May 23, 1990.