[No. C008549. Third Dist. Apr. 12, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ABELARDO PONCE DELEON GALINDO, Defendant and
Appellant.

1530

1532

**COUNSEL**

Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**PUGLIA, P. J.**—A jury convicted defendant of transporting cocaine (count II) (Health & Saf. Code, § 11352) and heroin (count IV) (Health & Saf. Code, § 11352). The jury also found the amount of cocaine transported exceeded three pounds. (Health & Saf. Code, § 11370.4, subd. (a)(1).)[1]

On appeal, defendant raises claims of (1) ineffective assistance of counsel, (2) unlawful search and seizure, (3) instructional error, and (4) sentencing error. We shall affirm.

Briefly stated, the evidence at trial showed defendant was riding as a passenger in his own vehicle when a California Highway Patrol (CHP) officer stopped the vehicle for speeding. After the officer issued a traffic citation, he asked the driver and defendant if he could search the vehicle. Both gave permission to search. The officer removed the plastic vent panel located at the driver's side door jamb and observed two brick-shaped packages hidden inside the rear fender well of the car. These packages contained large amounts of cocaine and heroin hidden in the vehicle. Defendant's palm print was detected on the outer wrapping of one of the packages of heroin.

I

■ Defendant claims he was ineffectively assisted by counsel. Defendant complains counsel failed to make a special motion in superior court to suppress the narcotics evidence found in his vehicle. (See Pen. Code, § 1538.5; hereafter all statutory references to sections of an undesignated code are to the Penal Code.) Defendant asserts counsel's failure deprived him of a de novo hearing to test the legality of both the detention and the consent to search and also forecloses appellate review of those issues.

Under section 1538.5, subdivision (i), a suppression motion in superior court does not result in a de novo hearing where, *as here*, an unsuccessful

---

[1] Defendant was acquitted of possession of cocaine for sale (count I) (Health & Saf. Code, § 11351) and possession of heroin for sale (count III) (Health & Saf. Code, § 11351).

motion to suppress was earlier made at the preliminary hearing. Rather, the superior court hearing on the suppression motion is limited to consideration of the evidence presented at the preliminary hearing, with the superior court assuming the role of a reviewing court.[2] In that role, the superior court is required to draw all inferences in favor of the magistrate's findings where such findings are supported by substantial evidence. (See *Anderson* v. *Superior Court* (1988) 206 Cal.App.3d 533, 544 [253 Cal.Rptr. 651]; *People* v. *Ramsey* (1988) 203 Cal.App.3d 671, 678-679 [250 Cal.Rptr. 309].)

Defendant's additional claim, that counsel's failure to move under section 1538.5 in superior court forecloses appellate review of the legality of his detention and consent to search, is equally misplaced. Counsel moved to dismiss the information on the same grounds raised in the unsuccessful suppression motion at the preliminary hearing. (§ 995.) The section 995 motion preserved the detention and consent to search issues for appeal. (*People* v. *Kain* (1989) 212 Cal.App.3d 816, 820 [260 Cal.Rptr. 838]; see *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896-897 [150 Cal.Rptr. 910, 587 P.2d 706].)

Defendant was not deprived of effective assistance of counsel.

## II

 Defendant challenges the denial of his motion to dismiss the information, contending his consent to search his vehicle was invalid because it was the product of an unlawful detention and was neither knowing nor voluntary.

The evidence at the preliminary hearing shows that at approximately 9:30 a.m., CHP Officer Stephen White stopped defendant's car for speeding. The driver, codefendant Mendoza, and defendant were seated in the front. Codefendant Angulo was seated in the back. White requested Mendoza's driver's license and the vehicle registration. Mendoza produced his driver's license and then spoke to defendant in Spanish. Defendant removed the vehicle registration from the glove compartment and gave it to White. The registration listed defendant as the owner of the vehicle.

Mendoza accompanied White to the officer's vehicle, where White issued a citation for speeding. After White had given the citation to Mendoza and as Mendoza began to walk back to defendant's vehicle, White asked if there were any guns or drugs in the car. Mendoza responded, "No." White then

---

[2] An exception is made when defendant offers to present evidence which could not reasonably have been produced at the preliminary hearing (§ 1538.5, subd. (i)), a claim not asserted here.

requested permission to search the vehicle. Mendoza responded, "Sure, go ahead." White presented a consent form printed in both English and Spanish to Mendoza. The form explained and White reiterated that Mendoza did not have to consent and could request the search be stopped at any time. White then asked Mendoza to read the form and, provided Mendoza was willing to allow a search of the vehicle, to sign it. After examining the form, Mendoza signed and returned it to White.

Because defendant was the registered owner of the vehicle, White also sought defendant's consent as well. Since defendant did not appear to speak English well, White asked Mendoza to explain the consent form to defendant and to ask defendant to sign the form if he consented to a vehicle search. Mendoza and defendant conversed in Spanish. Defendant then examined the form and signed it. White searched the vehicle and discovered the cocaine and heroin.

Defendant concedes he and his companions were legally detained for the purpose of issuing a speeding citation. (See *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587].) Defendant argues, however, the transaction between himself and White in which White obtained his consent to search was a "seizure" of defendant unsupported by any individualized suspicion of criminal activity. We disagree.

■ "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. . . ." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 34 [20 L.Ed.2d 889, 913, 88 S.Ct. 1868], conc. opn. of White, J.) Therefore "not all personal intercourse between policemen and citizens involves 'seizures' of persons." (392 U.S. at p. 19, fn. 16 [20 L.Ed.2d at p. 905].) "[A] person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 553-554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].)

■ Here, there was no "seizure" of defendant. The events took place in public. (Cf. 446 U.S. at p. 555 [64 L.Ed.2d at p. 510]). White did not display a weapon (*ibid.*) nor use language or tone of voice indicating that compliance was compelled. (*Id.* at p. 554 [64 L.Ed.2d at p. 509].) To the contrary, White made it abundantly clear that consent could be refused. "Such conduct, without more, [does] not amount to an intrusion upon any constitutionally protected interest." (*Id.* at p. 555 [64 L.Ed.2d at p. 510]; see

also *California* v. *Hodari* (1991) __ U.S. __ [113 L.Ed.2d 690, 111 S.Ct. 1547].)

Nothing in the record suggests that either defendant or Mendoza had any objective reason to believe that they were not free to end the discussion and proceed on their way. (Cf. *ibid.*) Instead, "in a spirit of apparent cooperation" (*Sibron* v. *New York* (1968) 392 U.S. 40, 63 [20 L.Ed.2d 917, 935, 88 S.Ct. 1889]), both agreed to allow a search of the vehicle. The record fully supports the People's claim that White's postcitation inquiry of defendant could properly be initiated without objective justification of criminal activity and resulted in no restraint of defendant's liberty. (*United States* v. *Mendenhall, supra,* 446 U.S. at pp. 552-555 [64 L.Ed.2d at pp. 508-510]; see *People* v. *Grant, supra,* 217 Cal.App.3d at p. 1461.)

■ We also reject defendant's claim his consent to search was invalid because it was neither knowing nor voluntary. Defendant bases this claim on the preliminary hearing testimony of himself and Mendoza. Mendoza testified that when he spoke to defendant in Spanish regarding the consent form, he told defendant only that White wanted defendant to sign it. Through an interpreter, defendant testified he could not speak or understand English and could not read Spanish. Defendant claims the evidence presented at the preliminary hearing could lead to only one conclusion: that he did not understand he was being asked to consent to a search of the vehicle and that he signed the form only because he was directed to do so by Mendoza.

We disagree, primarily because in examining the issue of consent the magistrate was required to consider all of the evidence, not just that evidence selected by defendant favorable to his theory. White testified he requested Mendoza to explain to defendant the provisions of the consent form and to ask defendant to sign the form only if defendant was agreeable to allowing White to search the vehicle. According to White, Mendoza and defendant conversed in Spanish, after which defendant examined the form for at least 30 seconds and signed it. From White's testimony the magistrate could infer (1) there was substantially more discussion between Mendoza and defendant than Mendoza's claim he simply told defendant that White wanted defendant to sign the form, and (2) defendant's careful examination of the form belied his claim that he could not read Spanish. In light of all the evidence presented, the magistrate could properly conclude defendant did in fact freely and knowingly consent to a search of his vehicle.

Moreover, apart from White's testimony, the magistrate was not required to conclude from the testimony of Mendoza and defendant that defendant's consent was not voluntary. Because the demeanor of a testifying witness is

not perpetuated by the cold record, it has been held time and again the credibility of witnesses and the weight to be given their testimony is vested exclusively in the trier of fact. (E.g., *People v. Flummerfelt* (1957) 153 Cal.App.2d 104, 106 [313 P.2d 912].) In denying the motion to suppress the magistrate necessarily rejected the testimony of both Mendoza and defendant, and this court has neither the authority nor the desire to interfere with that determination. (*Ibid.*)

### III

■ Defendant argues the prosecutor improperly failed to preserve relevant evidence, including defendant's vehicle and two briefcases found therein, the money seized from defendant and his codefendants, and the outer wrappings in which the cocaine and heroin were packaged. Defendant claims these items may have yielded exculpatory fingerprint evidence. Citing *People v. Zamora* (1980) 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d 1361], defendant argues the trial court had a duty sua sponte to instruct the jury regarding the evidentiary value of the lost items. There is no merit in defendant's claim.

In February 1990, before trial, defendant moved to continue the trial, arguing a continuance was needed in order to determine whether the People's failure to preserve evidence warranted a motion for dismissal or some lesser sanction. Defendant also moved for discovery, apparently in an attempt to establish whether the items sought had in fact been lost. Both motions were argued at a single hearing, at which the People advised the court that in April 1989, notice had been given defendant that the vehicle and the money seized from defendant would be forfeited on June 7, 1989. (See Health & Saf. Code, § 11488.4.) The People further represented that on June 7, 1989, a declaration of forfeiture was served on the defendant. (*Ibid.*) In September 1989, the vehicle and money were in fact forfeited. The trial court denied both the motion for continuance and for discovery, finding it "unconscionable" that defendant waited until such a late date to seek to discover this evidence.

Defendant had access to the vehicle, money and other items for inspection and testing until that evidence was forfeited approximately seven months after defendant's arrest. Moreover, defense counsel at no time made an effort to examine either the vehicle or the personal property found inside it until 11 months after defendant's arrest. Nor does the record show defendant ever moved that any of the evidence be preserved. The trial court's denial of defendant's motions for continuance and discovery as belated is amply supported by the record.

Striking preemptively at the claim of incompetency of counsel which failure of this contention will inevitably generate, we observe it is doubtful an examination of the evidence before its forfeiture would have produced anything of benefit to the defense. "To meet [the] standard of constitutional materiality . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta* (1984) 467 U.S. 479, 489 [81 L.Ed.2d 413, 422, 104 S.Ct. 2528].) Defendant's palm print was found on one of the bindles of heroin, and the prints of Mendoza and Angulo were found on other narcotics evidence. Moreover, the prosecutor informed the court that in the previous trials of Mendoza and Angulo, evidence was presented that it was impossible to lift any fingerprints from the vehicle's speaker covers behind which the narcotics were hidden. Finally, even if there were other fingerprints lifted from inside the vehicle, "it would be impossible, from the fact of fingerprints themselves, to tell when and under what circmustances they were placed in the vehicle." (*People* v. *Martinez* (1989) 207 Cal.App.3d 1204, 1218 [255 Cal.Rptr. 691].) Since the exculpatory value of the lost evidence is not readily apparent, defendant has failed to meet the *Trombetta* standard.

Equally important, defendant cannot show any bad faith on the part of the state. *Arizona* v. *Youngblood* (1988) 488 U.S. 51, 57 [102 L.Ed.2d 281, 289, 109 S.Ct. 333] concerned the failure of the state to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The court refused to impose a duty on the state to retain all material that might conceivably be of evidentiary value in a particular prosecution. Instead, the court held that unless a defendant can show bad faith on the part of the state, failure to preserve potentially useful evidence is not a denial of due process. (*Id.* at pp. 57-58 [102 L.Ed.2d at p. 289].)

In the absence of any showing regarding the exculpatory value of the forfeited evidence or of bad faith on the part of the People, defendant was not entitled to sanctions, let alone an instruction concerning the failure of the People to preserve such evidence. (See generally *California* v. *Trombetta, supra,* 467 U.S. at pp. 488-489 [81 L.Ed.2d at pp. 421-422]; *People* v. *Huston* (1989) 210 Cal.App.3d 192, 213-214 [258 Cal.Rptr. 393]; see also *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1233-1234 [255 Cal.Rptr. 569, 767 P.2d 1047]; *People* v. *Martinez, supra,* 207 Cal.App.3d at pp. 1217-1218.)

IV

■ Finally, defendant contends the trial court improperly imposed aggravated sentences for the offenses. The trial court relied on three factors in

aggravation: the crimes were planned and premeditated (Cal. Rules of Court, former rule 421(a)(8); hereafter all citations to rules are to the California Rules of Court), defendant admitted to the court-appointed psychologist that he was aware of the contraband in the vehicle (former rule 414(d)(9)), and defendant was an active participant in the perpetration of the crimes because it was defendant's vehicle that was used to transport the narcotics (former rules 414(c)(5), 441(a)).

Defendant argues the factors of planning and premeditation and degree of active participation are one and the same. We disagree. That the crimes were planned and premeditated is distinct from the fact that it was defendant's car that was used to secrete and transport the contraband. The facts clearly indicate defendant was an active perpetrator of the crimes and not a passive coconspirator.

Defendant also claims the court's reliance on his statement to the psychologist that he was aware of the narcotics in the vehicle violates the dual use of facts prohibition set forth in former rule 441(d). Defendant argues his "admission of awareness of wrongdoing is nothing more than a statement [that defendant] knew that he was doing wrong and thus intended to do wrong. Intent, either general or specific, is an element of any criminal offense. . . . To cite [defendant's] admission of . . . awareness of wrongdoing as a factor in aggravation is merely to reiterate the charge of commiting the offense [of transporting narcotics]."

The trial court's reference to defendant's statement of awareness of narcotics cannot be considered in a vacuum. The record suggests the court cited defendant's statement as a circumstance in aggravation for two reasons. First, at the sentencing hearing there was a claim by the defense that defendant may not in fact have made such statement, but that in any event defendant played only a minor role in the crimes. To the extent defendant was either denying or downplaying his role in the crimes, such fact clearly reflects a lack of remorse, which may properly be considered as a circumstance in aggravation. (See former rules 414(d)(9), 441(a).) Second, defendant argued at the sentencing hearing that his lack of education prevented him from being a knowing participant in such a sophisticated drug operation. However, defendant's statement that he knew the drugs were in the vehicle shows defendant was at least criminally sophisticated and thus a full-fledged participant in the crimes for which he was convicted. Sophistication is likewise a proper consideration in aggravation. (Former rule 421(a)(8).)

The circumstances in aggravation cited by the sentencing court are both numerous and supported by the record. Accordingly, there was no

sentencing error. (Cf. *People* v. *Hubbell* (1980) 108 Cal.App.3d 253, 259 [166 Cal.Rptr. 466].)

The judgment is affirmed.

Davis, J., and Scotland, J., concurred.