23 F.3d 409
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Roy JOHNSON, Jr., Defendant-Appellant.
 No. 93-3794.
 United States Court of Appeals, Sixth Circuit.
 April 13, 1994.
 
 Before: KEITH, MARTIN, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claiming that an airport search of his luggage and person violated his Fourth Amendment rights, Roy Johnson, Jr., appeals his conviction and sentence for possession with the intent to distribute cocaine. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * On May 22, 1992, based on information from an unidentified source, Detective Hoell of the New York Port Authority advised the Cleveland Hopkins Airport Police by telephone that a passenger by the name of Mark Jones was carrying either "drugs or money" from New York, New York, to Cleveland, Ohio. According to the source, Jones had purchased a one-way cash ticket on Continental Flight 473 from New York's LaGuardia Airport, which was scheduled to arrive in Cleveland at 10:30 p.m. The source described Jones as a black male, thirty-five to forty years of age, approximately six feet tall, with short, receding hair worn in a ponytail. In addition, the source indicated that Jones would be wearing a blue denim jacket and pants, with pin stripes on the jacket shoulders, and carrying a royal blue duffel bag.
 
 
 3
 At 10:15 p.m., Drug Enforcement Administration Special Agent George Krebs and Cuyahoga County Sheriff's Department Officer James Salvino, who was at the time assigned to the DEA's airport task force, observed Johnson deplaning from Flight 473. Krebs and Salvino, who were both wearing street clothes, noted that Johnson met the physical description supplied by the unidentified source in every visible respect, and was carrying a blue nylon duffel bag. The officers then saw Johnson speak to a man carrying a red nylon bag, and walk quickly thereafter to the baggage claim area. The second individual proceeded to a public telephone, where he acted as if he were making a call while surveying the surrounding area.
 
 
 4
 In a public area inside the airport terminal complex--at the bottom of an escalator leading to the rapid transit station--Krebs and Salvino subsequently approached Johnson, identified themselves as police officers, and displayed their credentials. Krebs inquired if Johnson would mind stepping away from the escalator and speaking to Krebs. Johnson agreed to do so. Johnson then stated that he had travelled to Cleveland from New Jersey and, in response to further inquiry, produced his airline ticket. After noting that the ticket was a one-way cash fare from New York to Cleveland in the name of Mark Jones, the officers returned the ticket to Johnson. At this time, Salvino requested and was granted permission to search Johnson's duffel bag. Johnson inquired as to "what this was all about," and was told by Krebs that if everything were in order, Krebs would tell him why he was being questioned. Also at the officer's request, Johnson produced identification bearing his real last name. The officers asked Johnson why he was travelling under the name Jones, and he responded that his aunt, whom he had been visiting, had used the wrong name in purchasing his ticket.
 
 
 5
 After a search of Johnson's bag revealed no contraband, Krebs informed Johnson that the officers had received a tip, and that travelling under an assumed name constituted suspicious conduct. Salvino then asked if Johnson would consent to a search of his person. Johnson indicated that he would. During this search, Salvino felt a bulge under Johnson's shirt. Salvino then unbuttoned Johnson's shirt and discovered a blue velcro band. The band held four clear plastic bags containing cocaine and coffee grounds. At this point, Johnson was placed under arrest.
 
 II
 
 6
 On June 9, a federal grand jury returned an indictment charging Johnson with one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). On June 29, the government filed an information of increased penalty pursuant to 18 U.S.C. Sec. 851, placing Johnson on notice that his prior narcotics conviction would increase his sentence if convicted on the instant charges to a mandatory minimum of ten years of incarceration. Johnson, in turn, filed a motion to suppress evidence gathered as a result of his seizure by Krebs and Salvino, and the officers' search of his person. On March 31, 1993, the district court denied Johnson's motion. Johnson then waived his right to a jury trial and moved for reconsideration of his motion to suppress evidence.
 
 
 7
 On June 10, the district court conducted a joint bench trial and hearing on Johnson's motion to suppress. At the conclusion of this proceeding, the court found that, based on the information the Cleveland Hopkins Airport Police had received from the Port Authority, Krebs and Salvino had sufficient reasonable suspicion of criminal activity to detain and question Johnson. The court further found that, under the totality of the circumstances, Johnson consented to the searches of both his luggage and his person. In the alternative, the court found that the officers had the right under Terry v. Ohio, 392 U.S. 1 (1968), to conduct a "pat-down" search of Johnson. The court reasoned that the officers, upon detecting the bulge created by the packets under Johnson's shirt, developed the requisite probable cause to "go further and unbutton his shirt." Joint Appendix at 27. Accordingly, the district court denied the motion to suppress and found Johnson guilty of the single count of the indictment.
 
 
 8
 On June 29, the court sentenced Johnson to one hundred and twenty months of imprisonment, followed by eight years of supervised release, and imposed a $50 special assessment. This timely appeal followed.
 
 III
 
 9
 This Court reviews a district court's factual findings on suppression issues for clear error, and the district court's conclusions of law under a de novo standard. United States v. Baro, 15 F.3d 563, 566 (6th Cir.1994). In addition, the Court "review[s] the 'evidence in the light most likely to support the district court's decision.' " United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.) (quoting United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988)), cert. denied, 113 S.Ct. 264 (1992).
 
 IV
 
 10
 Johnson argues that a reasonable person in his position during his encounter with Krebs and Salvino would not have believed that he was free to leave. As a result, Johnson maintains that he was seized by the officers within the meaning of the Fourth Amendment. According to Johnson, because the information known to the officers did not provide them with the requisite probable cause to seize him, any subsequent consent to search obtained by the officers was tainted by his unlawful confinement and therefore invalid.
 
 
 11
 This Court has identified three distinct types of contact that occur between police officers and the travelling public: (1) purely consensual contact not constituting a seizure, for which officers need not provide any articulable reason; (2) classic Terry stops, based on reasonable suspicion; and (3) situations in which officers stop an individual whom they have probable cause to believe has committed a crime. United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990). Notably, only the second and third types of contact involve a seizure. As this Court recently stated while reviewing another case involving an encounter in the public area of an airport, " 'a seizure' occurs during a police-citizen encounter 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " United States v. Taylor, 956 F.2d 572, 575 (6th Cir.) (en banc) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), cert. denied, 113 S.Ct. 404 (1992).
 
 
 12
 In exploring further the distinction between a consensual encounter and a seizure, this Court has noted that "the Fourth Amendment is not violated when a police officer approaches a member of the traveling public, identifies himself as a law enforcement officer, and solicits information. Moreover, a request to search the passenger's luggage or person does not transform this initial questioning into a seizure." Baro, 15 F.3d at 566 (citations omitted). Finally, circumstances that may in fact transform a non-custodial consensual encounter into a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.
 
 
 13
 In response to Johnson's contention that his encounter with Krebs and Salvino constituted a seizure, the government argues that the "district court correctly ruled that the defendant's voluntary participation in a non-custodial interview did not trigger Fourth Amendment protections." Government's Brief at 9. Although it may well have had the factual basis to do so, however, the district court made no such ruling. Rather, the court found that Krebs and Salvino had reasonable suspicion to stop and question Johnson, and that Johnson subsequently consented to the searches of his luggage and person. Thus, of the three types of contact between police officers and the travelling public identified in Flowers, the court essentially characterized the initial encounter here not as the first type, a consensual encounter, but as the second type, a classic Terry stop. We must consider, therefore, whether the officers had the authority to make such a stop.
 
 
 14
 Law enforcement officers may stop a traveller under an investigatory detention rationale only if, based on the totality of the circumstances, they have a reasonable articulable suspicion that the traveller is engaged in criminal activity. United States v. Sokolow, 490 U.S. 1, 8 (1989). In discussing the circumstances under which an anonymous tip may provide the reasonable suspicion necessary for a Terry stop, the Supreme Court noted in Alabama v. White, 496 U.S. 325, 330 (1990) (citation omitted):
 
 
 15
 [R]easonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors--quantity and quality--are considered in the "totality of the circumstances."
 
 
 16
 The Court went on in White to find that under the totality of the circumstances, the anonymous tip in that case, as independently corroborated by the police, "exhibited sufficient indicia of reliability to justify the investigatory stop." Id. at 332.
 
 
 17
 Here, as in White, the police received an anonymous and detailed tip that the defendant was engaged in criminal activity. Significantly, before stopping Johnson, the police were able to corroborate the informant's predictions as to: (1) the flight Johnson was on; (2) Johnson's physical description; (3) the clothes Johnson was wearing; and (4) the luggage Johnson was carrying. Johnson also arrived from a known "source city" for narcotics, walked quickly to the baggage area, and was observed speaking to another individual. See Taylor, 956 F.2d at 578 (including defendant's arrival from a source city and the fact that he walked rapidly through the terminal among the "full spectrum of facts" giving rise to the requisite reasonable articulable suspicion for an investigatory detention). The officers subsequently observed this second individual surveying the surrounding area while pretending to make a phone call. Under the totality of these circumstances, including in particular the quantity of information provided by the informant that the police were able to corroborate, we find that Krebs and Salvino had reasonable articulable suspicion to stop Johnson in order to determine if he was indeed carrying drugs or the proceeds from drug sales.
 
 V
 
 18
 Even if the officers had a right to detain him briefly under Terry, Johnson contends that: (1) the district court erred in finding that he consented to the searches of his luggage and person during the investigatory detention; and (2) the search the officers conducted exceeded the limited authority to stop and frisk inherent in an investigatory stop. In making this claim, Johnson reiterates his contention, which was specifically discredited by the district court at trial, that he consented to the searches only after being grabbed, threatened, and shoved by the officers.
 
 
 19
 As a preliminary matter, this Court has noted that "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellant [sic] review." Taylor, 956 F.2d at 576. Because the officers' description of the facts of the airport encounter constitutes a permissible view of the evidence, we must accept the district court's decision to credit their account over Johnson's. Id. (noting that a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous).
 
 
 20
 We address next whether, given the circumstances of the encounter as described by the officers and credited by the district court, the government has shown that Johnson's consent was " 'unequivocal and intelligently given, untainted by duress or coercion.' " Baro, 15 F.3d at 566 (quoting United States v. Cooke, 915 F.2d 250, 252 (6th Cir.1990)). Whether consent was voluntarily given is "a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). In addition, this Court has noted that a defendant's voluntary consent to a search is not invalid solely because the consent was given during a justified Terry stop. United States v. Knox, 839 F.2d 285, 294 n. 4 (6th Cir.1988) (citing Florida v. Royer, 460 U.S. 491, 502 (1983), cert. denied, 490 U.S. 1019 (1989).
 
 
 21
 Numerous factors support the district court's determination that Johnson voluntarily consented to the searches. Prior to obtaining Johnson's consent, the officers, who were dressed in street clothes: (1) did not remove Johnson from the public area of the airport; (2) did not make any showing of force, such as drawing their weapons or touching Johnson; (3) did not employ stern or threatening language; and (4) returned Johnson's ticket after examining it. See Schneckloth, 412 U.S. at 226 (listing factors the Supreme Court has assessed in determining whether "a defendant's will was over-borne"). Furthermore, Johnson, who was at the time thirty-three years of age, had been convicted of drug trafficking and therefore had some previous exposure to law enforcement procedures. Id. Under the totality of these circumstances, we find that the district court did not err in finding that Johnson voluntarily consented to the searches of his luggage and person.
 
 
 22
 Because we find that Johnson consented to the searches, we do not reach issue of whether the officers had the right, even absent consent, to conduct these searches as part of a valid investigatory detention.
 
 VI
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.