The STATE of Ohio

v.

TOLER.

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CR 335385.

Decided June 25, 1996.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *James P. Boyle,* Assistant Prosecuting Attorney, for the state.

*Timothy F. Rose,* for Craig Toler.

---

BURT W. GRIFFIN, Judge.

The court has determined the following facts after a hearing on defendant's motion to suppress.

On January 10, 1996 at about 7:15 p.m., Cleveland Police Officer William Nolan observed three people huddled on a sidewalk outside an apartment building at 2008 Cliffview in Cleveland, Ohio. When Officer Nolan and at least one other officer, in plain clothes, exited from an unmarked police car, one man ran, but defendant and a woman remained. The evidence is in dispute as to what happened next.

Accepting only for the purposes of analysis the officer's version, Officer Nolan asked the defendant to produce identification. The officer stated that when defendant produced his wallet, he saw a glass pipe, recognizable as a pipe for smoking crack cocaine, protruding from the wallet.

I

Under these circumstances, the sole issue is whether defendant's constitutional rights under the Fourth Amendment to the United States Constitution and the Ohio Constitution were violated by the officer's request that defendant produce identification. Although defendant was in an area known for drug trafficking, the officer did not observe anything which gave reasonable cause to seek identification of defendant. The time of the evening was such that people would ordinarily be about the area. There was no indication that defendant, in the company of a female, was a danger to the person or property of others. The fact that one person ran might be a basis for suspecting the person who ran, but defendant and his female companion did not run.

The United States Supreme Court has ruled in *Florida v. Bostick* (1991), 501 U.S. 429, 434–435, 111 S.Ct. 2382, 2386–2387, 115 L.Ed.2d 389, 398, that the police

may ask for identification of a citizen so long as they do not convey a message that compliance with their request is required. To what extent a police officer's request for identification may appear to require compliance has been a matter of concern to judges. See *Florida v. Bostick*, 501 U.S. at 442–444, 111 S.Ct. at 2390–2391, 115 L.Ed.2d at 403–404 (Marshall, J., dissenting); *United States v. Weaver* (C.A.8, 1992), 966 F.2d 391, 396–397; *United States v. Lewis* (D.D.C. 1990), 728 F.Supp. 784, 788–789; *State ex rel. Ekstrom v. Justice Court* (1983), 136 Ariz. 1, 6, 663 P.2d 992, 997 (Feldman, J., concurring); *State v. Kerwick* (Fla.App.1987), 512 So.2d 347, 348–349; *People v. Spicer* (1984), 157 Cal.App.3d 213, 218–220, 203 Cal.Rptr. 599, 603.

 The determination of whether a person's actions are consensual or the result of police coercion is a question of fact to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854, 862–863. Factors to be considered in determining whether a person's actions are voluntary include whether the person was informed of the right not to comply with the officer's request, whether there was a show of force by the officer, whether the officer used language or a tone of voice indicating that the compliance with the officer's request might be compelled, whether there was the threatening presence of several officers, whether there was a display of a weapon by an officer, whether the officer was in uniform or had identified himself as an officer, and whether there was physical touching by the officer. See *State v. Bryant* (May 30, 1991), Cuyahoga App. No. 58621, unreported, 1991 WL 95067; *United States v. Johnson* (Apr. 13, 1994), C.A.6 No. 93–3794, unreported, 1994 WL 131744; cf. *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509; *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862; *United States v. Seventy–Three Thousand, Two Hundred Seventy–Seven Dollars* (C.A.7, 1983), 710 F.2d 283, 288. Specifically with regard to requests for identification, in addition to the above-mentioned factors, the court will consider whether the officer informed the person of the reason for the request for identification. See *People v. Spicer*, 157 Cal.App.3d at 218–220, 203 Cal.Rptr. at 603.

 In the present case, accepting the police version of events, the police request occurred when plain clothes police unexpectedly alighted from an unmarked police car. They did not simply pull to the curb and request defendant or his female companion to approach the car—an action that would have indicated freedom to comply or not comply. They did not inform defendant of his right not to comply. No significant noncoercive conversation preceded the request for identification. One man was so frightened by the conduct of the police that he

fled. Such a confrontation, without a period of noncoercive communication, clearly communicated to an ordinary person that compliance is expected. Moreover, the manner employed by the police in approaching defendant, a sudden, unprovoked, exiting from one or more cars by several police officers, was an obvious show of force which could only have communicated to defendant that he had to comply with the requests of the police officers.

Contacts between the police and citizens such as occurred in the present case involve both wrongdoers and innocent citizens. Even in areas of high drug use or frequent drug transactions, innocent citizens attempting to enjoy the freedoms guaranteed them by the Constitutions of the United States and Ohio engage in communication with drug users and dealers. Their freedoms must be protected at the same time that the police conduct needed and lawful investigations. Since the guilty and the innocent often cannot be determined in advance, our law protects the liberties of the guilty in order to protect those of the innocent.

In poor neighborhoods, such difficulties can become acute. Yet the reality is that, even in so-called high drug areas, an overwhelming number of citizens are law-abiding.

This case presents a revealing exposition of who may be affected by this kind of police conduct. When the police approached defendant, one person fled. Perhaps he was a drug dealer. Two remained and were investigated further by the police. The woman presented no basis for arrest. The defendant was a drug user with a pipe containing cocaine residue. Is the intrusion on the freedom of two citizens, one of whom apparently was completely innocent and the other more a danger to himself than to others, worth sacrificing the freedom of individuals to walk in their neighborhoods without being subject to aggressive police action? Several judges have answered this question in the negative. Justice Feldman of the Arizona Supreme Court stated:

"The thought that an American can be compelled to 'show his papers' before exercising his right to walk the streets, drive the highways or board the trains is repugnant to American institutions and ideals." *State ex rel. Ekstrom,* 136 Ariz. at 6, 663 P.2d at 997 (Feldman, J., concurring).

Discussing the implications of suspicionless bus sweeps, Justice Marshall stated:

" ' "[T]he evidence in this cause has evoked images of other days, under other flags, when no man traveled his nation's roads or railways without fear of unwarranted interruption, by individuals who held temporary power in the Government. The spectre of American citizens being asked, by badge-wielding

police, for identification, travel papers—in short a raison d'etre—is foreign to any fair reading of the Constitution, and its guarantee of human liberties. This is not Hitler's Berlin, nor Stalin's Moscow, nor is it white supremacist South Africa." ' " *Florida v. Bostick,* 501 U.S. at 443, 111 S.Ct. at 2391, 115 L.Ed.2d at 404 (Marshall, J., dissenting), quoting *Bostick v. State* (Fla.1989), 554 So.2d 1153, 1158; see, also, *Lewis,* 728 F.Supp. at 788–789.

Experience teaches us that we must be vigilant to protect the freedoms of the innocent when investigating suspicious behavior, especially when the behavior is of conduct posing no immediate danger to others. Thirty years ago our cities were torn by urban riots. Nearly every one of those riots was triggered by a police arrest of someone who posed no immediate danger to others. The devastation of our own Hough area in 1967 resulted from citizen anger over the arrest of a prostitute at a bar near East 79th and Hough Avenue. History can repeat itself.

Despite the danger to liberty and public order inherent in overly aggressive police conduct, the police understandably see such activity as a valuable tool in the "war on drugs." But the police must proceed with courtesy and respect even when being aggressive. To that end, the Supreme Court has not given free rein to police regarding these suspicionless interrogations. The police cannot convey to the citizen that his or her compliance with the police request is mandatory. When that occurs the encounter loses its consensual nature and any evidence obtained by such an encounter will be excluded, absent a showing of "reasonable suspicion" of illegal activity as mandated by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. See *Florida v. Bostick,* 501 U.S. at 434–435, 111 S.Ct. at 2386–2387, 115 L.Ed.2d at 398–399. There are several steps law enforcement officers can take to convey to people questioned during such searches that their compliance with the officer's request is not required. As suggested in *People v. Spicer,* this sort of encounter should be preceded by "prefatory remarks" and the officer should explain why he is requesting identification. See 157 Cal.App.3d at 218–220, 203 Cal.Rptr. at 603. Moreover, the officer should not use commanding language or tone when requesting identification. *Id.* Some courts have suggested that the least threatening conduct is when the inquiring officer informs the citizen of his right to refuse the request for identification. *Id.;* cf. *United States v. Mendenhall,* 446 U.S. at 558–559, 100 S.Ct. at 1879–1880, 64 L.Ed.2d at 512–513 (the lack of an admonition regarding the right to refuse consent to a search is "highly relevant" to the determination that there has been consent). Certainly officers should avoid threatening actions, such as brandishing weapons or making a show of force, when conducting a suspicionless stop. See *State v. Bryant* (May 30, 1991), Cuyahoga App. No.

58621, unreported, 1991 WL 95067; *United States v. Johnson* (Apr. 13, 1994), C.A.6, No. 93–3794, unreported, 1994 WL 131744.

These steps were not taken by the police in the present case, and the conduct employed by officer Nolan and the other officers involved could only have indicated to the defendant that he would be forced to comply with the officers' requests. Therefore, the request for identification by Officer Nolan was improper and any evidence obtained as a result of this request must be suppressed. See *Florida v. Bostick,* 501 U.S. at 434–435, 111 S.Ct. at 2386–2387, 115 L.Ed.2d at 398–399.

## II

Having accepted the state's version of events for the purpose of analysis, the court must say that it is, in fact, uncertain as to the true set of events. The defendant's version of the encounter was that the police alighted from their car, immediately thrust the defendant against a police car, patted him down, extracted his wallet, and saw the cocaine pipe only after opening the wallet. That action is not inconsistent with commonly reputed police practice. There is nothing in the testimony that enables the court to resolve the credibility conflict.

Accordingly, the state has not met its burden of proving by a preponderance of the evidence that the defendant voluntarily relinquished his right not to produce identification.

The motion to suppress is granted.

A trial date shall be set.

IT IS SO ORDERED.

*Motion granted.*