Filed 1/3/14  P. v. Garcia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039121 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1235944) |
| v. | |
| ARTHUR GARCIA, | |
| Defendant and Appellant. | |

Defendant Arthur Garcia appeals from a judgment of conviction entered after he pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)).  Defendant also admitted three prior convictions for being under the influence of a controlled substance and one prior conviction for transportation of a controlled substance (Health & Saf. Code, § 11379) within the meaning of Penal Code section 667.5, subdivision (b).  The trial court suspended imposition of sentence and placed defendant on probation for three years.  On appeal, defendant contends:  (1) the trial court erred when it denied his motion to suppress evidence; (2) the trial court erred when it imposed the $110 monthly probation supervision fee because there was insufficient evidence of his ability to pay; and (3) defense counsel's failure to object to imposition of the booking fee constituted ineffective assistance of counsel.  We affirm.

# I.  Statement of Facts[1]

At approximately 5:05 p.m. on June 28, 2012, Deputy Henry Rocha was patrolling the parking area of an apartment complex when he contacted an individual with an open container of alcohol.  Rocha arrested this individual after discovering that he had an outstanding trespassing warrant.  The individual requested that Rocha ask defendant, who was in the apartment complex laundry room, to hold his property for him.

Rocha, who was in full uniform and wearing his service weapon, went to the laundry room, where he stood at the doorway.  He never entered the laundry room.  The laundry room measured approximately five feet by five feet and contained at least one washer and one dryer.  Defendant was washing clothing and charging his cell phone. Rocha was approximately four or five feet from defendant.  Rocha, spoke to defendant in a "normal tone" of voice.  He asked defendant if he lived in the apartment complex, and defendant replied that he was a transient.  Rocha next asked defendant if he was on probation or parole.  Defendant replied that he was not.  Rocha then asked defendant if he knew the individual in the parking area.  Rocha told him that the individual had property that he wanted to give to defendant.  As Rocha was speaking with defendant, he noticed that defendant was "[s]weating profusely, [had] excited raspy speech, [had] dry mouth, [was] real fidgety.  Could not stand still."  Based on his training and experience, Rocha concluded that defendant displayed objective symptoms of being under the influence of methamphetamine.

Rocha asked defendant if he could speak to him outside, and defendant said yes. After conducting various field sobriety tests, Rocha asked defendant if he had any drugs or drug paraphernalia on him.  Defendant responded that he was in possession of methamphetamine.  Defendant then consented to a search, and Rocha found

---

[1]     The following facts are taken from the hearing on the motion to suppress evidence.

2

methamphetamine in defendant's pocket. At that point, Rocha handcuffed defendant and placed him in the back of the patrol car.

## II. The Trial Court's Ruling

Following argument, the trial court stated: "There is no evidence here that the officer's tone was anything other than casual and inquisitive. There is nothing here to suggest that the officer used any display of force or intimidation. It is merely his physical placement in the doorway that the defense contends amounts to such a show of authority that defendant or any reasonable person would have not felt free to leave. [¶] . . . [¶] . . . [T]here was no other way for the officer to approach the defendant and have a consensual encounter with him other than to walk up to the doorway of the laundry room. . . . [¶] . . . [¶] I do not find that any of the officer's conduct would have conveyed to a reasonable person[] under these circumstances, and the totality of these circumstances, that he or she was not free to refuse to answer questions or not free to leave. And I consider in this context not only the physical circumstances but also the nature of the questions the officer asked, which again in and of themselves do not transform that conduct into some demonstration of force or intimidation." The trial court then denied the motion to suppress evidence.

## III. Discussion

### A. Motion to Suppress Evidence

Defendant contends that the trial court erred in denying his motion to suppress evidence. He argues that the officer illegally seized him in violation of the Fourth Amendment, and his subsequent consent to be searched was involuntary, and thus the results of the field sobriety tests and the methamphetamine found in his pocket should have been suppressed.

3

The Fourth Amendment, made applicable to the states through the due process clause of the Fourteenth Amendment, protects the individual against unreasonable searches and seizures. (*Mapp v. Ohio* (1961) 367 U.S. 643, 656-660.) When a police officer engages in conduct that violates the Fourth Amendment, the evidence obtained through such conduct is subject to the exclusionary rule. (*People v. Mayfield* (1997) 14 Cal.4th 668, 760.)

"For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are . . . 'consensual encounters' [citation], which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' [Citation.] Second, there are . . . 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' [Citation.] Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

In determining whether an encounter between a police officer and an individual constitutes a detention, we note that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*).) For Fourth Amendment purposes, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." (*United States v. Mendenhall* (1980) 446 U.S. 544, 553.) "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the

4

circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick,* at p. 439.) "Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*Ibid.*)

"Whether a seizure occurred within the meaning of the Fourth Amendment is a mixed question of law and fact qualifying for independent review. [Citations.] Accordingly, 'we review the trial court's findings of historical fact under the deferential substantial evidence standard, but decide the ultimate constitutional question independently. [Citations.]' [Citation.] We must accept factual inferences in favor of the trial court's ruling. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

Here, a single uniformed officer stood in the doorway of the laundry room. The officer then asked defendant three questions in a "casual and inquisitive" tone of voice while he was five feet away from him. The officer neither displayed his weapon nor touched defendant. In considering the totality of the circumstances, there was nothing in the officer's conduct which "would have communicated to a reasonable person that the person was not free to decline the officer['s] requests or otherwise terminate the encounter." (*Bostick, supra*, 501 U.S. at p. 439.)

Relying on *People v. Wilkins* (1986) 186 Cal.App.3d 804 (*Wilkins*) and *People v. Spicer* (1984) 157 Cal.App.3d 213 (*Spicer*), defendant argues that he was seized when the officer blocked the only exit to the laundry room, and thus a reasonable person would not have felt free to walk away. *Wilkins* held that the defendant was seized when the police

5

officer parked directly behind his vehicle. (*Wilkins*, at p. 809.) *Spicer* held that the defendant, a passenger in a vehicle that had been lawfully stopped, was seized when the officer asked her to produce a driver's license and illuminated her purse with his flashlight. (*Spicer*, at pp. 216, 218.) The United States Supreme Court subsequently considered this question in *Bostick* and thus is controlling. In that case, two officers boarded a bus, asked the defendant for identification, and then requested his consent to search his luggage after advising him that he had the right to refuse consent. (*Bostick*, *supra*, 501 U.S. at pp. 431-432.) The defendant argued that "a reasonable bus passenger would not have felt free to leave under the circumstances of this case because there is nowhere to go on a bus. Also, the bus was about to depart. Had [the defendant] disembarked, he would have risked being stranded and losing whatever baggage he had locked away in the luggage compartment." (*Id.* at p. 435.) *Bostick* reasoned that "the mere fact that [the defendant] did not feel free to leave the bus does not mean that the police seized him. [The defendant] was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. [The defendant's] movements were 'confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive." (*Id.* at p. 436.) Thus, *Bostick* concluded that "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." (*Ibid.*) Here, as in *Bostick*, defendant's confinement was the result of his own conduct, not that of the officer. Defendant was washing his clothes and charging his cell phone in the laundry room. He would not have felt free to leave even if the officer was not present until he had completed these activities. As in *Bostick*, the appropriate inquiry was whether a reasonable person would have felt he or she was free to decline to answer the officer's questions or terminate the encounter. (*Bostick, supra*, 501 U.S. at p. 439.)

6

In sum, since the officer's initial encounter with defendant was consensual, it was not a seizure under the Fourth Amendment. Accordingly, the trial court properly denied the motion to suppress evidence.

### B. Monthly Probation Supervision Fee

Defendant next contends that there was insufficient evidence to support a finding that he had the ability to pay a monthly probation supervision fee of $110.

Before imposing various fines and fees at the sentencing hearing, the trial court told defendant: "You're to report to a probation officer within three days of your release. . . . [¶] You're ordered to report to the Department of Revenue within 30 days of your release from custody for a determination of your ability to pay the fines and fees the court will impose. [¶] If you disagree with their findings, you have a right to have a hearing on that issue before the court." The trial court then imposed a monthly probation supervision fee not to exceed $110.

Penal Code section 1203.1b states in relevant part: "[I]n any case in which a defendant is granted probation or given a conditional sentence, the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . . The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the

right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver."

Defendant argues that the trial court failed to make a finding on his ability to pay this fee and that there was no evidence of his ability to pay. The Attorney General contends that the issue has been forfeited.

Even assuming that the issue has not been forfeited, defendant's challenge fails. As defendant concedes, Penal Code section 1203.1b, subdivision (a) does not require the trial court to make a finding on a defendant's ability to pay the monthly probation supervision fee prior to ordering a defendant to report for a determination by the Department of Revenue on the issue. Here, the trial court ordered defendant to go to the Department of Revenue for a determination of his ability to pay the fee, thereby complying with the statutory obligation of Penal Code section 1203.1b, subdivision (a). The Department of Revenue will inquire into defendant's ability to pay, but no determination of ability to pay has yet been made. By conditioning defendant's monthly probation supervision fee contingent on the Department of Revenue's determination as to his ability to pay the fee, the order imposed no current financial obligation on defendant. Instead, it set a maximum monthly financial obligation of $110 and left open what portion, if any, of that maximum defendant would pay. After the Department of Revenue determined defendant's ability to pay, as the trial court informed defendant, he would have the right to challenge that determination at an ability-to-pay hearing before the trial court. Thus, any challenge to the monthly probation supervision fee is premature.

### C. Ineffective Assistance of Counsel

As previously discussed, the trial court ordered defendant to report to the Department of Revenue for a determination of his ability to pay all fees, and in the event, that he disagreed with this determination, he was entitled to an ability-to-pay hearing.

8

The trial court imposed a booking fee of $259.50. Defendant did not object to imposition of this fee.

Government Code section 29550, subdivision (c) authorizes the imposition of a criminal justice administration fee on an arrestee who is ultimately convicted in order to cover the expenses in booking or processing the arrestee in county jail. Government Code section 29550, subdivision (d)(2) states: "The court shall, as a condition of probation, order the convicted person, based on his or her ability to pay, to reimburse the county for the criminal justice administration fee, including applicable overhead costs."

*People v. McCullough* (2013) 56 Cal.4th 589 recently held that a defendant who fails to challenge the sufficiency of the evidence to support imposition of a booking fee at the sentencing hearing forfeits the claim on appeal. (*Id.* at p. 590.) At the time of defendant's sentencing hearing, the California Supreme Court had granted review in that case to consider this issue. (*People v. McCullough* (2011) 193 Cal.App.4th 864, review granted June 29, 2011, S192513.) Defendant now contends that his counsel's failure to object to imposition of booking fees without evidence of his ability to pay constituted ineffective assistance of counsel.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.) However, "'[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

9

Here, defendant has failed to show that defense counsel's performance was deficient. Defense counsel may not have objected to imposition of the booking fee because he considered the issue premature given that defendant had not yet reported to the Department of Revenue for a determination of his ability to pay the fee. Defense counsel may have also known facts outside the record that would have supported imposition of the fee. Thus, we reject defendant's ineffective assistance contention.

## IV.  Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Grover, J.

10