Filed 12/11/14  P. v. Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040012 |
| | (Santa Cruz County |
| Plaintiff and Respondent, | Super. Ct. No. F24758) |
| v. | |
| JAMES AUDRIC CRUZ, | |
| Defendant and Appellant. | |

Following the denial of his motion to suppress (Pen. Code, § 1538.5),[1] defendant James Audric Cruz pleaded guilty to a charge of possession of a concealed firearm as an active participant in a criminal street gang (§ 25400, subd. (c)(3)).  In exchange for his plea, the trial court dismissed a charge of evading a peace officer with willful disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)), along with a criminal street gang-enhancement allegation (§ 186.22, subd. (b)(1)).  Pursuant to the agreement, Cruz was sentenced to formal probation of three years following a 180-day county jail sentence, with credit for time served of 78 days.  The trial court also imposed various probation conditions, including a variety of gang-related conditions.

On appeal, Cruz argues the trial court erred in denying his motion to suppress and further challenges several of his probation conditions as unconstitutionally vague and overbroad.  We find the trial court did not err in denying the motion to suppress, but

---

[1] Further unspecified statutory references are to the Penal Code.

agree that some of the challenged probation conditions should be modified to include a knowledge requirement. We will affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Cruz was initially charged by information with one count of carrying a loaded concealed weapon (§ 25400, subd. (c)(6)) and one count of evading an officer with willful disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)). As to the first count, the information alleged that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)).

On May 17, 2013, City of Watsonville Police Officer Scott Parsons was on patrol in Watsonville in a marked patrol vehicle along with Sergeant Stephen Fish. At about 7:00 p.m., Parsons observed a green Honda backing out of the driveway at 53 Airport Road. Parsons knew that three brothers, all of whom are members of a criminal street gang called either Poorside Chicos or Poorside Watson, lived at that address with their parents. One of those brothers was, according to Parsons, "one of the higher ranking Poorside Chicos in Watsonville." Parsons had twice executed search warrants at that address, looking for firearms.[3]

As Officer Parsons passed the Honda, which was traveling in the opposite direction, he observed Cruz driving the vehicle, and as he looked over, Cruz quickly turned his head away as if to avoid being identified. Parsons made a U-turn and saw Cruz turn left at a stop sign. Parsons speeded up to try to get Cruz's license plate number. When Parsons turned at the same intersection where he had just seen the Honda turn, he could no longer see it and surmised it had made another turn. Parsons made

---

[2] As Cruz pleaded no contest and challenges the trial court's denial of his motion to suppress, we derive the facts from the transcript of the motion hearing.

[3] Officers found firearms during one of those searches.

2

another turn and again saw the Honda perhaps 200 feet away. Parsons again sped up to about 50 mph, but was not gaining ground on Cruz, even though the posted speed limit on the street was 25 mph.

The road curved to the left ahead. Officer Parsons noticed that Cruz drove in the oncoming lane of traffic and the Honda tilted to the right as Cruz negotiated that curve, indicating that Cruz was driving "pretty fast." After Cruz ran a stop sign at the next intersection and made a right turn, Parsons activated his lights and continued his pursuit. Cruz ran the next stop sign and made another turn before pulling over in front of a mobilehome park. As he made this second turn, Parsons saw Cruz reaching down to his right, as if to grab something or hide something.

Officer Parsons approached the driver's side of the Honda while Sergeant Fish moved toward the passenger side. Parsons was concerned because it seemed like Cruz was trying to avoid him and the way he appeared to be grabbing or hiding something before the stop, so Parsons had his hand on his weapon as he approached the car. He kept some distance from the door and noticed that Cruz would not make eye contact with him. Cruz also "appeared to be shaking and nervous." Cruz had turned off the ignition and was playing with his keys. Parsons saw him reach as if it to put them in his pocket, so Parsons directed him to drop the keys instead and keep his hands away from his pockets.

Officer Parsons asked Cruz if he knew Abel De La Torre, also known as Menace, the high ranking member of Poorside Chicos who resided at 53 Airport Road. Cruz said he did not. Parsons asked Cruz to step out of the car. Cruz was wearing baggy pants and a long shirt which covered his waistline and pockets. At this point, Parsons estimated a little over a minute had passed since he stepped out of the patrol car to approach Cruz.

Cruz stepped out of the car, but turned his back on Officer Parsons and took a couple steps backwards towards him. Parsons thought this was odd, so he directed Cruz to "step back" before placing him in handcuffs. Parsons said he did this because "of [Cruz's] nervousness, because of the way he was moving inside the vehicle prior to the

3

stop, the way he was driving, the house he was coming from[,] [a]ll of that together made me believe that he was either armed or that he was hiding something from me that could possibly hurt me." Another factor in his decision to handcuff Cruz was that Parsons was aware that the mobilehome park where they stopped was occupied by several members of the Poorside Chicos gang. The way they were positioned during the stop meant that Parsons had his back to most of the mobilehomes.

Officer Parsons advised Cruz that he was "detained and not under arrest." Parsons did not ask to see Cruz's driver's license prior to having him get out of the Honda. He asked Cruz if he had any weapons on him or in the vehicle, and Cruz responded, "I have no probation, you can check my terms, you can't search me." Parsons pat-searched Cruz and found a .22-caliber revolver in his right front pants pocket.

Officer Parsons subsequently determined that Cruz had a suspended driver's license, so his vehicle was towed and impounded. Prior to the Honda being towed, Parsons conducted an inventory search of the vehicle.

Cruz brought a motion to suppress the evidence seized from his person and vehicle on the grounds that: (1) his detention was illegally prolonged; (2) he was arrested without probable cause; (3) the pat-down search was illegal because Officer Parsons did not have a reasonable suspicion he was armed and dangerous; and (4) the search of his vehicle was beyond the scope of the arrest. Parsons testified at the hearing on the motion, and following the close of evidence, defense counsel's argument focused principally on the justification for conducting the pat-down search.

Prior to ruling on the motion, the court explained its reasoning, as follows: "It seems to me the entire issue is whether or not there is the additional circumstances that over and above the detention to justify the *Terry* search. [*Sic*.] And I think if you have conduct consistent with avoiding the officer, evading the officer, whether it's a felony or not, whether it's a crime or not, is not the issue. The question is whether or not there's conduct consistent with avoiding the officer, and I believe there is. . . . [¶] Plus you have

4

some indicia of gang conduct, the fact that he is leaving the home of a known gang member.  That's all you need, the combination of those things for the officer for his own safety to conduct a *Terry*[4] pat-down."  The trial court then denied Cruz's motion.

Cruz subsequently entered into a plea bargain, pleading guilty to an amended[5] charge of possession of a concealed firearm as an active participant in a criminal street gang (§ 25400, subd. (c)(3)).  In exchange, the People agreed to dismiss the charge of evading a peace officer with willful disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)), along with the gang-enhancement allegation (§ 186.22, subd. (b)(1)).  It was further agreed that Cruz would be sentenced to formal probation of three years following a 180 day county jail sentence, with credit for time served of 78 days.

Cruz was also ordered to comply with various terms of probation, several of which he now challenges on appeal.  We will discuss those probation terms in detail below.

## II.  DISCUSSION

### A.  *The motion to suppress was properly denied*

Cruz renews his argument that his detention was unnecessarily prolonged and thus became a de facto arrest without probable cause.  Because Officer Parsons stopped him for traffic violations, he should have immediately proceeded to cite Cruz for those violations rather than interrogate him about his affiliation with known gang members.  He also argues that Parsons' patsearch was illegal since there was nothing to indicate Cruz was armed and dangerous.

"A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search.  [Citation.]  'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by

---

[4] *Terry v. Ohio* (1968) 392 U.S. 1, 27 (*Terry*).

[5] The information alleged a violation of section 25400, subdivision (c)(6).

substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

Since Cruz violated the Vehicle Code, Officer Parsons "had the legal right, indeed the duty" to detain him.  (*People v. Superior Court* (*Brown*) (1980) 111 Cal.App.3d 948, 954 [officer has right and duty to detain where he witnesses a traffic violation].)  "[W]hen circumstances are ' "consistent with criminal activity," they permit--even demand--an investigation . . . .' " (*People v. Souza* (1994) 9 Cal.4th 224, 233.)  Cruz concedes that Parsons was justified in initiating the traffic stop after observing him run two stop signs.

However, Cruz argues that, under *People v. McGaughran* (1979) 25 Cal.3d 577, a detention based on a traffic infraction may last only as long as it is reasonably necessary under the particular circumstances for the officer to perform duties related to the stop.  Because the patsearch was not related to the stop, it was the product of an unlawful detention.  We disagree that *McGaughran* is dispositive under these circumstances.

Under *McGaughran*, an investigatory stop exceeds constitutional limits when it extends beyond what is reasonably necessary under the circumstances to effectuate the purpose of the stop.  Circumstances that develop during a detention may provide reasonable suspicion to prolong the detention.  (*People v. Warren* (1984) 152 Cal.App.3d 991, 995-997; *People v. Suennen* (1980) 114 Cal.App.3d 192, 200-201 [if additional cause to detain develops after the initial stop, additional time to investigate is allowed].)  "There is no set time limit for a permissible investigative stop; the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly."  (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.)  "Implicit in the *McGaughran* analysis is a recognition that the circumstances of each traffic detention are unique and that the reasonableness of each detention period must be judged on its particular circumstances."  (*Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 358.)

6

Turning to Officer Parsons' pat-down search, in reviewing the Fourth Amendment reasonableness of an officer's conduct, we must consider the totality of the circumstances known to the officer when the search was conducted. (*Terry*, *supra*, 392 U.S. at p. 27; *People v. Souza*, *supra*, 9 Cal.4th at p. 231; *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.) "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (*Terry*, *supra*, at p. 27.) "Reasonable suspicion must be based on 'commonsense judgments and inferences about human behavior.' [Citation.] The determination of reasonableness is 'inherently case-specific.' " (*In re H.M.* (2008) 167 Cal.App.4th 136, 143 (*H.M.*).)

In *H.M.* the Court of Appeal found a patsearch did not violate the Fourth Amendment because the minor ran through heavy traffic, sweating profusely and nervously looking around, causing officers to believe he had been involved in some kind of criminal activity; the area was known for gang activity; the minor was known to the officers to be an admitted gang member; and there had been a shooting a block away the previous day. "Viewed objectively, through the lens of common sense and experience, H.M.'s odd behavior strongly suggested criminal activity was afoot." (*H.M.*, *supra*, 167 Cal.App.4th at p. 144.) "Officers in an area plagued by violent gang activity need not ignore the reality that persons who commit crimes there are likely to be armed. '[T]he fact that an area involves increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous. While this factor alone may not justify a weapon search, combined with additional factors it may.' " (*Id.* at p. 146.)

In this case, there were several circumstances which caused Officer Parsons to delay his investigation into Cruz's traffic infractions and place Cruz in handcuffs while he performed a pat-down search for weapons. Parsons first observed Cruz as he backed out of the driveway of a residence where several known gang members, one of them a

7

high-ranking gang member, lived. As Parsons and Cruz passed each other, Cruz quickly looked away, as if to avoid being recognized. After Parsons made a U-turn to follow Cruz and run the license plate of his vehicle, Cruz sped up in what seemed to be an attempt to get away. Cruz then ran a stop sign, and Parsons activated his patrol lights. Cruz ran a second stop sign and Parsons could see his right shoulder dip down as if he were grabbing something or hiding something. Although Cruz subsequently stopped and complied with Parsons' directions, the parking lot where they stopped was in a mobilehome park where Parsons knew other gang members lived. Parsons testified less than a minute elapsed between stepping out of his patrol car and instructing Cruz to get out of his vehicle. Cruz was wearing baggy pants, and a long shirt which covered his waistline and all of his pockets. Furthermore, when Parsons asked Cruz if he had any weapons, Cruz did not simply say no. His response--"I have no probation, you can check my terms, you can't search me"--was less than reassuring.

Given these circumstances, it was reasonable to Officer Parsons to place Cruz in handcuffs and pat him down for weapons before proceeding to cite him for the traffic violations. The detention was not unreasonably prolonged. The trial court properly found that this did not amount to a de facto arrest given all that had transpired up to that point, and the facts also support Parsons' reasonable suspicion that Cruz was armed and dangerous.

### B. *The probation conditions*

#### 1. *Relevant facts and procedure*

As conditions of Cruz's probation, the trial court imposed "gang terms" at the sentencing hearing. The trial court did not read out those conditions at the hearing, but provided them to Cruz in writing, asking that he review and sign them, which he did. Cruz now challenges conditions Nos. 9, 10, 11, 13 and 14, as listed in the court minutes. We set forth these individual conditions below in the sections discussing Cruz's arguments as to why they should be modified.

8

### 2.    *Lack of knowledge requirement*

Cruz first challenges these conditions as being unconstitutionally vague and overbroad since they fail to require him to have knowledge of the circumstances which would result in a probation violation.

The People do not object to the modification of these probation conditions but direct our attention to the approach adopted by our colleagues at the Third Appellate District in *People v. Patel* (2011) 196 Cal.App.4th 956.  In *Patel*, the Third Appellate District expressed its frustration with the "dismaying regularity" to which it must revisit the issue of a lack of an express scienter requirement in orders of probation.  (*Id.* at p. 960.)  Because there exists a substantial uncontradicted body of case law that establishes that a "probationer cannot be punished for presence, possession, association, or other actions absent proof of scienter," the Court of Appeal cautioned it would no longer entertain the issue on appeal, but would instead construe all probation conditions proscribing restrictions on presence, possession, association, or other actions with the requirement that the action be undertaken knowingly.  (*Ibid.*)

This court, and a number of the Courts of Appeal, have declined to follow the rationale of *Patel*.  (See, e.g., *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*); *People v. Moses* (2011) 199 Cal.App.4th 374.)  In *Pirali*, we chose to modify probation conditions to include an express knowledge requirement, noting "[o]ur Supreme Court faced the issue of the lack of a knowledge requirement in a probation condition and concluded that 'modification to impose an explicit knowledge requirement is necessary to render the condition constitutional.'  [Citation.]  Until our Supreme Court rules differently, we will follow its lead on this point." (*Pirali*, *supra*, at p. 1351.)

### a.    *Probation condition No. 9*

"[Condition No.] 9:  Do not be a member of or associate with any criminal street gang, as defined in subdivision (f) of Penal Code Section 186.22."

Cruz argues this condition is unconstitutionally vague because he could violate it by unwittingly associating with someone he does not know is a gang member. The People concede this argument and we agree the concession is appropriate.

We previously modified a similar condition in *People v. Leon* (2010) 181 Cal.App.4th 943 because it failed to include an "explicit knowledge requirement." (*Id*. at p. 950.) Accordingly, we will direct that the condition be modified to read: "Do not be a member of or knowingly associate with any criminal street gang, as defined in subdivision (f) of Penal Code Section 186.22."

### b. Probation condition No. 10

"[Condition No.] 10: Do not do any unlawful act or acts in furtherance of, in association with, or for the benefit of any criminal street gang."

Cruz contends this condition is vague and overbroad in that he could violate it by committing lawful acts which, without his knowledge, just happen to benefit a criminal street gang. The People do not concede this point, arguing that a knowledge requirement is implied in the condition itself. We agree with the People on this point, but for a different reason.

Cruz misreads the condition as if it were composed in this way: "Do not do any unlawful act, or acts in furtherance of, [etc.]." By separating the word "acts" from the adjective "unlawful," he argues that any acts, lawful or unlawful, which benefit a criminal street gang are prohibited. However, the probation condition does not prohibit Cruz from committing *lawful* acts at all, even those which happen to benefit a street gang. There is no comma between the words "act" and "or," and thus the adjective "unlawful" applies to both "act" and "acts." The condition prohibits Cruz from committing a single unlawful act or multiple unlawful acts which benefit a criminal street gang. Since the prohibition extends only to unlawful conduct, the scienter is implied and no express knowledge requirement is necessary.

### c. Probation condition No. 11

10

"[Condition No.] 11:  Do not knowingly have any contact with any person known to you to be a member of a criminal street gang, except for members of your immediate family.  Do not knowingly frequent areas where you know gang members congregate.  If you see members of a criminal street gang in public, you are not to associate with or contact them in any way.  Leave the area immediately."

Cruz takes issue with the portion of this condition which describes how he is to behave upon seeing a member of a criminal street gang in public.  If he does not know that a person is a gang member, and he approaches them, he is in violation of probation.  The People fail to address this argument in their brief.

We agree that the condition is unconstitutionally vague as phrased.  Accordingly, we will direct that this portion of the condition be modified to read, "If you see persons you know to be members of a criminal street gang in public, you are not to associate with or contact them in any way."

### d.  *Probation condition No. 13*

"[Condition No.] 13:  Do not display any hand signs with gang significance or wear any clothing which indicates gang affiliation (i.e. colors, bandanas, symbols, insignia, numbers, monikers, patterns, etc.) known by you to be gang related, or has been identified as such to you by law enforcement or probation officers."

According to Cruz, this condition is unconstitutionally overbroad in that it prohibits his unknowing display of hand signs.  The People concede the point, and we agree the concession is appropriate.

We will direct that the probation condition No. 13 be modified to read, "Do not knowingly display any hand signs with gang significance or wear any clothing which indicates gang affiliation (i.e., colors, bandanas, symbols, insignia, numbers, monikers, patterns, etc.) known by you to be gang related, or has been identified as such to you by law enforcement or probation officers."

### e.  *Probation condition No. 14*

"[Condition No.] 14: Do not wear, display, or possess any gang clothing, indicia or paraphernalia in any form. Do not possess photographs or media depicting individuals wearing, displaying or possessing gang clothing, indicia or paraphernalia in any form. This includes, but is not limited to, photographs, graffiti, symbols, bandanas and gang related clothing."

Cruz also argues that this condition does not require that he have actual knowledge of what constitutes gang clothing, indicia or paraphernalia, and thus he could unwittingly violate his probation. The People agree, noting that this court modified a similar probation condition in *People v. Leon*, *supra*, 181 Cal.App.4th at page 951. We agree with the concession, except as to Cruz's suggestion that the word "knowingly" be added before the phrase "wear, display, or possess" in the first sentence. Wearing, displaying or possessing clothing, indicia or paraphernalia is not done "unknowingly." One may not know the significance of what one is wearing, but it is unreasonable to suggest that one does not know that they are wearing the thing in question.

Accordingly, we will direct that probation condition No. 14 be modified to read as follows, "Do not wear, display, or possess what you know to be any gang clothing, indicia or paraphernalia in any form. Do not knowingly possess photographs or media depicting individuals wearing, displaying, or possessing what you know to be gang clothing, indicia or paraphernalia in any form. This includes, but is not limited to, photographs, graffiti, symbols, bandanas and gang related clothing."

> 3. *Probation condition No. 11's restrictions on constitutional rights*

Cruz also challenges the first two sentences of probation condition No. 11, which direct him not to "have any contact" with anyone he knows is a criminal street gang member and not to "knowingly frequent areas" where he knows gang members congregate. The phrase "have any contact" is vague and limits his freedom of movement. The word "areas" is overbroad and, in this context, could apply to many square blocks of

12

a city and perhaps an entire city itself. The word "frequent" is not just overbroad, but obscure and not sufficiently specific.

We have previously found that the term "frequent" is not appropriate in this context because it is no longer a term in common usage and it fails to adequately describe the prohibited activity. (*In re H.C.* (2009) 175 Cal.App.4th 1067, 1072.) Since the purpose of the probation condition is to preclude Cruz from being physically present at a place where he knows gang members congregate, the more appropriate word to use would be "visit."

As to Cruz's challenges to the phrase "have any contact" and the word "areas," we are not persuaded that these unduly restrict his constitutional rights to travel and loiter. The intended purpose of the condition is to make sure that Cruz stays away from people he knows to be gang members and those places where he knows gang members gather. A condition that restricts probationer's exercise of constitutional rights may be permissible so long as it is narrowly drawn to serve the important public interests of safety and rehabilitation. (*In re Michael D.* (1989) 214 Cal.App.3d 1610, 1616.)

## III.    DISPOSITION

The judgment is modified so that probation conditions Nos. 9, 11, 13 and 14 now read as follows:

"09)  Do not be a member of or knowingly associate with any criminal street gang, as defined in subdivision (f) of Penal Code Section 186.22."

"11)  Do not knowingly have any contact with any person known to you to be a member of a criminal street gang, except for members of your immediate family. Do not knowingly visit areas where you know gang members congregate. If you see persons you know to be members of a criminal street gang in public, you are not to associate with or contact them in any way."

"13)  Do not knowingly display any hand signs with gang significance or wear any clothing which indicates gang affiliation (i.e., colors, bandanas, symbols, insignia,

13

numbers, monikers, patterns, etc.) known by you to be gang related, or has been identified as such to you by law enforcement or probation officers."

"14)  Do not wear, display, or possess what you know to be any gang clothing, indicia or paraphernalia in any form.  Do not knowingly possess photographs or media depicting individuals wearing, displaying, or possessing what you know to be gang clothing, indicia or paraphernalia in any form.  This includes, but is not limited to, photographs, graffiti, symbols, bandanas and gang related clothing."

As so modified, the judgment is affirmed.

_____

           Premo, J.

WE CONCUR:

_____

      Rushing, P.J.

_____

       Elia, J.